**UNITED STATES of America**

v.

**Ronald James KOUREY**

**No. CRIM.A. 5:02–0122.**

United States District Court,
S.D. West Virginia,
Beckley Division.

Aug. 14, 2003.

Michael H. Spencer, Esquire, Assistant United States Attorney, Charleston, Counsel for the United States.

G. Ernest Skaggs, Esquire, Fayetteville, Counsel for Defendant.

### *MEMORANDUM OPINION AND ORDER*

VANDERVORT, United States Magistrate Judge.

Under consideration is the request of the Bureau of Prisons for authorization to force medicate Defendant in view of the United States Supreme Court's recent decision in *Sell v. United States,* —— U.S. ——, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). The request is hereby DENIED. It clearly appears that grounds may exist for administering antipsychotic medication

to Defendant involuntarily under the reasoning of the Supreme Court *Washington v. Harper*, 494 U.S. 210, 221, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 (1990), because Defendant is reportedly "gravely disabled" by his mental condition and poses a danger to himself and perhaps others. The decision whether or not to do so is best left to the medical professionals at the Butner Federal Medical Center acting in accordance with established administrative due process procedures.[1] Judicial authorization or review is not appropriate at this juncture under *Harper*. Because the record does not reflect that a decision has been made on *Harper* grounds to forcibly medicate Defendant and taken through the available administrative procedure, the Court deems it inappropriate to consider the Bureau of Prisons' request under *Sell*. The Court further finds *Sell* inapplicable under the circumstances presented in this case.

### PROCEDURAL HISTORY AND FACTUAL BACKGROUND

On June 18, 2002, Defendant entered a plea of guilty to a single-count Information charging him with violating 18 U.S.C. § 1361 by breaking a glass door at the Robert C. Byrd United States Courthouse in Beckley, West Virginia with a hammer. (Document No. 13.)[2] On August 29, 2002, the Court sentenced Defendant to one year in prison and one year on supervised release. (Document No. 21.) Defendant was released from prison on February 21, 2003. On March 26, 2003, the United States Probation Office filed a Petition to revoke Defendant's supervised release. (Document No. 28.) The Probation Office requested that Defendant's supervised release be revoked because Defendant left Pinehaven Homeless Shelter where he had been residing on March 24, 2003, without notifying the Probation Office; failed to participate in mental health counseling as the Probation Office directed; and failed to continue taking his medication regularly and to show proof of his medication to his probation officer monthly. *Id.* The Court issued an Arrest Warrant, and Defendant was arrested on April 9, 2003, in the Eastern District of Tennessee. (Document No. 32.)

On May 9, 2003, Defendant filed a Motion for Mental Status Examination requesting basically that his competency to know and understand the nature and consequences of the charges and proceedings against him and assist in his defense be assessed. (Document No. 33.)[3] On May 14, 2003, the parties convened for an initial hearing upon the United States Probation Office's Petition requesting that the Court revoke Defendant's supervised release. The United States was represented by Assistant United States Attorney Michael Spencer and Defendant was present and

---

1. The Bureau of Prisons adopted a three-step administrative due process procedure for forcibly medicating inmates in treatment of mental problems in 1992 after the Supreme Court issued its decision in *Harper*. 28 C.F.R. § 549.43. The procedure is concluded when the inmate has appealed the decision to administer medication forcibly to the institution mental health division administrator. Judicial review has only been deemed appropriate after exhaustion of the administrative procedure for consideration of whether the decision was made arbitrarily. *See United States v. Morgan*, 193 F.3d 252, 263 (4th Cir.1999).

2. Because Defendant did less than $1,000 in damage, the violation constituted a Class A misdemeanor. Defendant consented to proceedings before the United States Magistrate Judge. (Document No. 9.)

3. The Court notes that it ordered that Defendant's competency be evaluated once before. (Document No. 2.) Based upon findings contained in a Forensic Report, the Court determined that Defendant was competent. (Document No. 10 in Case No. 5:02–M–0007.)

represented by Court appointed counsel G. Ernest Skaggs.

During the May 14, 2003, hearing, the Court spoke to Defendant, and Defendant responded indicating that he understood. The Court noted that Defendant's appearance was quite different than it was at earlier proceedings. Defendant was clean cut and shaven and wore glasses at earlier proceedings. At the May 14, 2003, hearing, he had long hair and a beard and was not wearing glasses. Additionally, it appeared that Defendant had lost weight such that the Court found it reasonable to believe that Defendant's mental and physical condition had deteriorated significantly. Defendant further denied ever meeting Mr. Skaggs and that Mr. Skaggs was his attorney when Mr. Skaggs has represented Defendant throughout these proceedings. Accordingly, the Court found that there was reason to believe that Defendant might well be suffering from a mental health condition which may render him unable to understand the nature and consequences of the charges and proceedings against him and to assist in his defense. The Court granted Defendant's Motion for Mental Status Examination and ordered that a psychiatric and/or psychological examination of the Defendant be conducted by a qualified person in the Federal Bureau of Prisons and that a report of the examination be prepared pursuant to 18 U.S.C. § 4247(c). Defendant was continued in the custody of the United States Marshal to be taken forthwith to a federal facility for the psychiatric and/or psychological examination. (Document No. 34.)

By letter dated July 18, 2003, A.F. Beeler, Warden of the Federal Medical Center, Butner, North Carolina, reported to the Court as follows:

[I]t is the opinion of treatment staff here at the center that Mr. Kourey needs to be treated with medication because of his mental illness.

We held an involuntary medication hearing in his case on or about July 2, 2003, as we were in the process of understanding all of the implications of the Sell decision. We currently opine that the giving of any involuntary medication to restore competency must have judicial review. In his case, it appears there is a mixed case where he is gravely disabled as well as needing medication to restore competency. In an abundance of caution, we are sending this forward for your review.

Generally, we might wait until the 4241 evaluation was complete only medicating him if emergent; however, with the progression of his disease process, we believe it our responsibility to forward this at this time requesting a ruling.

By letter dated July 25, 2003, Warden Beeler further informed the Court as follows:

It is our opinion that Mr. Kourey is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings filed against him or assist properly in his own defense. However, we believe that with an additional period of hospitalization and treatment, Mr. Kourey's competency to stand trial may be restored. Therefore, we respectfully request that he be continued at our facility pursuant to Section 4241(d). As we have indicated in correspondence of last week, we believe that such competency is dependent upon being able to medicate him. The attached report also provides information regarding this. If the Court rules we are not able to treat him with medication, we will request permission to return him to Court as we believe no treatment other

than medication will restore him to competency.

Warden Beeler sent the Mental Health Department's Forensic Evaluation of Defendant along with his July 25 letter.

The United States has not filed a Motion requesting that Defendant be hospitalized for treatment or administered antipsychotic medication involuntarily. On July 29, 2003, however, the Court held a conference with Mr. Spencer, Mr. Skaggs and Probation Officer Brett Taylor to discuss the application of the United States Supreme Court's recent decision in *Sell v. United States,* —— U.S. ——, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). Mr. Spencer urged the Court to authorize involuntary medication under *Sell.* Mr. Skaggs and Mr. Taylor also urged the Court to authorize involuntary medication for other reasons. They believe that without antipsychotic medication Defendant clearly presents a significant danger to himself and perhaps to others.

### DISCUSSION

■ Under the Fifth Amendment Due Process Clause, Defendant has "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs ...." *See Washington v. Harper,* 494 U.S. 210, 221, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 (1990).[4] In view of this interest, and its decisions in *Washington v. Harper* and *Riggins v. Nevada,* 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992), the United States Supreme Court recently stated in *Sell v. United States,* —— U.S. ——, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003), as follows:

[T]he Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, it is necessary significantly to further important governmental trial-related interests.

—— U.S. at ——, 123 S.Ct. at 2184. The Court explained its conclusion specifying four factors which must be addressed in considering whether or not it is appropriate to administer medication involuntarily as follows:

This standard will permit involuntary administration of drugs solely for trial competence purposes in certain instances. But these instances may be rare because the standard says or fairly implies the following: First a court must find that *important* governmental interests are at stake. The Government's interest in bringing to trial an individual accused of a serious crime is important. However, courts must consider each case's facts in evaluating this interest because special circumstances may lessen its importance, *e.g.,* a defendant's refusal to take drugs may mean lengthy confinement in an institution, which would diminish the risks of freeing without punishment one who has committed a serious crime. In addition to its substantial interest in timely prosecution, the Government has a concomitant interest in assuring a defendant a fair trial. Second, the court must conclude that forced medication will *significantly further* those concomitant state interests. It must find that medication is substantially likely to render the defendant competent to stand trial and substantial-

---

**4.** "[T]he term 'antipsychotic drugs' refers to medications such as Thorazine, Mellaril, Proplixin, and Halzol that are used in treating psychosis, especially schizophrenia." *Mills v. Rogers,* 457 U.S. 291, 293 n. 1, 102 S.Ct. 2442, 2445 n. 1, 73 L.Ed.2d 16 (1982).

ly unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a defense. Third, the court must conclude that involuntary medication is *necessary* to further those interests and find that alternative, less intrusive treatments are unlikely to achieve substantially the same results. Fourth, the court must conclude that administering the drugs is *medically appropriate*.

*Id.,* —— U.S. at ——, 123 S.Ct. at 2177 (Emphasis in decision). The Court recognized that involuntary medication may also be appropriate under other circumstances stating as follows:

> We emphasize that the court applying these standards is seeking to determine whether involuntary administration of drugs is necessary significantly to further a particular governmental interest in rendering a defendant *competent to stand trial.* A court need not consider whether to allow forced medication for that kind of purpose, if forced medication is warranted for a *different* purpose, such as the purposes set out in *Harper* related to the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk. 494 U.S., at 225—26, 110 S.Ct. 1028, 108 L.Ed.2d 178. There are often strong reasons for a court to determine whether forced administration of drugs can be justified on these alternative grounds *before* turning to the trial competence question.

*Id.,* —— U.S. at ——, 123 S.Ct. at 2185 (Emphasis in decision). The Supreme Court stated further respecting forcing medication for different purposes as follows:

> If a court authorizes medication on these alternative grounds, the need to consider authorization on trial competence grounds will likely disappear. * * * We consequently believe that a court asked to approve forced administration of drugs for purposes of rendering a defendant competent to stand trial, should ordinarily determine whether the Government seeks, or has first sought, permission for forced administration of drugs on these other *Harper*-type grounds; and if not, why not.

*Id.,* —— U.S. at ——, 123 S.Ct. at 2185—86.

In *Washington v. Harper,* 494 U.S. 210, 221, 110 S.Ct. 1028, 1036, 108 L.Ed.2d 178 (1990), the Supreme Court considered a Washington State administrative Policy permitting involuntary administration of antipsychotic drugs after a psychiatrist determined that an inmate should be treated with antipsychotic drugs and the inmate refused and the decision was reviewed and approved by a panel consisting of a psychiatrist, a psychologist and an associate superintendent of mental hospital facility. *Id.,* 494 U.S. at 214—16, 110 S.Ct. at 1033. The question presented, as the Supreme Court stated, was "whether a judicial hearing is required before the State may treat a mentally ill prisoner with antipsychotic drugs against his will." *Id.,* 494 U.S. at 213, 110 S.Ct. at 1032. The Supreme Court held as follows:

> [T]he Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest.

*Id.,* 494 U.S. at 227, 110 S.Ct. at 1039—40. Finding the Policy sufficient constitutionally, the Court concluded that "[A]n inmates interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." *Id.,*

494 U.S. at 231, 110 S.Ct. at 1042. The Court explained that "[t]he risks associated with antipsychotic drugs are for the most part medical ones, best assessed by medical professionals. A State may conclude with good reason that a judicial hearing will not be as effective, as continuous, or as probing as administrative review using medical decisionmakers. We hold that the process requires no more." *Id.*, 494 U.S. at 233, 110 S.Ct. at 1042—43.

In *Hogan v. Carter*, 85 F.3d 1113 (4th Cir.1996)(*en banc* ), *cert. denied*, 519 U.S. 974, 117 S.Ct. 408, 136 L.Ed.2d 321 (1996), the Fourth Circuit considered whether a single instance of involuntary medication of an inmate who suffered a three hour uncontrollable seizure and was at risk of seriously injuring himself was unconstitutional under 42 U.S.C. § 1983 in view of the Supreme Court's decision in *Harper*. The Court held that the licensed psychiatrist who administered a dose of Thorazine to the inmate under emergency circumstances did not violate any clearly established law. Referring to *Harper*, the *Hogan* Court recognized that an inmate has a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs and essentially found the Court's ruling in *Harper* applicable by extension in the context of involuntary medication in emergency situations. The Court stated as follows:

> If, in the context of prolonged treatment, an inmate may be involuntarily medicated with an antipsychotic drug if a medical professional determines such medication to be in the inmate's best interests, then *a fortiori* the state retains the authority to administer such a drug in an emergency based upon the same medical judgment.

*Hogan, supra*, at 1117.

■ Heeding the Supreme Court's recommended course as set forth in *Sell* that the Court consider whether a decision to forcibly medicate Defendant on *Harper* grounds has been taken through the administrative due process procedures, the Court finds that the record does not indicate that it has. Second, while it has been determined that Defendant's mental condition renders him "gravely disabled", a phrase which resonates from the Supreme Court's decision in *Washington v. Harper*, 494 U.S. at 215–16, 110 S.Ct. at 1033, and administering antipsychotic drugs to Defendant would likely alleviate these circumstances and render him competent once again, nevertheless Defendant is not in the custody of the Bureau of Prisons for the purpose of treatment. Defendant is in custody for a psychiatric/psychological evaluation pursuant to 18 U.S.C. § 4247. He is not hospitalized pursuant to 18 U.S.C. §§ 4244, 4245 or 4246. The Bureau of Prisons' request for authorization to administer medication to Defendant involuntarily is therefore not in a posture procedurally for consideration under *Harper*. Finally, the Court finds that *Sell* is inapplicable under the circumstances. The Court simply cannot find that the Supreme Court envisioned that its decision in *Sell* would be applied in a case of this nature. Defendant is not facing serious criminal charges upon which he will be tried. Rather, Defendant is charged with violating the terms and conditions of his supervised release imposed for his admitted commission of a Class A misdemeanor. The circumstances and the law clearly require a denial of the Bureau of Prisons' request to administer medications to Defendant involuntarily in view of *Sell*.

The Bureau of Prisons has fulfilled its obligation of evaluating Defendant and submitting its report. Defendant should be returned to this District ·for a further hearing upon the issue of his competency. Of course, if an emergency develops in the meantime, the Bureau may attend to it as may be medically appropriate according to

the Fourth Circuit's decision in *Hogan, supra.*

Accordingly it is hereby **ORDERED** that (1) authorization to administer antipsychotic medications to Defendant as requested by the Bureau of Prisons is **DENIED**; (2) the July 18 and 25, 2003, letters from Warden Beeler to the Court and all enclosures, including the Forensic Evaluation of the Mental Health Department of the Federal Medical Center, Butner, North Carolina, shall be **FILED UNDER SEAL**; and (3) Defendant shall be returned forthwith to this District, and, upon his arrival, a hearing will be scheduled and conducted promptly to determine Defendant's mental competence pursuant to 18 U.S.C. § 4247(d).

The Clerk is directed to send a copy of this Order to counsel of record, Mr. Skaggs and Mr. Spencer, by fax and regular mail and to provide a copy to the Probation Office and the United States Marshal in this District.