**UNITED STATES of America,**

v.

**Herbert G. EVANS, Jr., Defendant.**

**No. 1:02CR00136.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Dec. 1, 2003.

Monroe Jamison, Jr., Abingdon, VA, for Defendant.

### MEMORANDUM OPINION

SARGENT, United States Magistrate Judge.

This matter is before the court on the motion of A.F. Beeler, Warden, Federal Medical Center, Butner, North Carolina, ("FMC Butner"), to allow the forcible medication of the defendant, Herbert G. Evans Jr., ("Evans"), in an attempt to restore him to competency to stand trial in this matter. Based on the reasoning set forth below, the motion will be denied.

1. At the time she swore to the criminal complaint, Dreisbach's name was Debra A. Thomerson.

2. According to the criminal complaint, Rural Development is an agency within the USDA

*I.*

On November 8, 2002, Debra A. Dreisbach,[1] ("Dreisbach"), a Senior Special Agent with the Office of the Inspector General of the United States Department of Agriculture, ("USDA"), filed a criminal complaint with the court to obtain a warrant for Evans's arrest. This criminal complaint alleged that on November 4, 2002, Evans entered the USDA Service Center in Wytheville, Virginia, and spoke with Robin Chapman, ("Chapman"), a Rural Development Community Development Technician who worked at the USDA Service Center,[2] regarding a past due notice he had received from Rural Development on his housing loan. According to the criminal complaint, Evans made the following statements to Chapman:

Evans proceeded to tell her that he was a 20–year veteran of the armed forces and had participated in World War I, World War II, and either the Korean or Vietnam wars. He stated that even though he was a veteran, the government was out to get him. He believed the late notices from [Rural Development] were tied into recent encounters with the Carroll County police where they confiscated weapons from his home.

He stated that the United States was heading towards communism and was not a free nation any longer, as the government had taken his guns and his vehicles. He told Chapman that he had three crosses in his yard, one for Ruby Ridge, one for Waco, and one for Oklahoma City.

responsible for administering the Single Family Direct loan program designed to assist low-income individuals with obtaining loans for the purchase of a residence or repair of an existing one.

He said that he was 74 years old, had lived his life, and would not "mind taking a few with me." He related that he was experienced from his time at war with chemical and biological warfare and if the [Rural Development] office did not get the situation straightened out with his loan and if they thought they saw terrorism before, they didn't until they saw what he could do.

The criminal complaint further alleged that Evans was extremely angry and loud when he spoke to Chapman. Chapman stated that she felt as if Evans was attempting to intimidate her and that she was, in fact, afraid of him and would "hit the back door" if she saw him enter the USDA Service Center in the future.

Evans was arrested on November 14, 2002, and subsequently charged in a one-count information with forcibly intimidating and interfering with an employee of the United States while engaged in the performance of her official duties in violation of 18 U.S.C. 111(a)(1), a misdemeanor. Evans appeared before the undersigned magistrate judge for a bond hearing on November 19, 2002. At this hearing, the government moved for Evans's detention pursuant to 18 U.S.C. §§ 4241(b), 4242(a), 4247(b) and (c) for the purpose of obtaining a psychological or psychiatric evaluation to determine if he was competent to stand trial and to determine whether he was sane at the time of the alleged offense. With the defendant not objecting, the court granted the motion.

Evans was subsequently transported to FCM Butner, where this evaluation was conducted. Upon the completion of this evaluation, the defendant appeared before the undersigned on March 24, 2003, for a competency hearing. During this hearing

Evans became disruptive and refused to control his behavior despite warnings from the court that his continued disruptive behavior would result in his removal from the courtroom. The undersigned then ordered Evans to be removed from the courtroom. Based on the evidence before the court at that time, the undersigned found Evans not competent to stand trial and, pursuant to 18 U.S.C. § 4241(d)(1), ordered that Evans be committed to the custody of the Attorney General to be hospitalized for treatment in a suitable mental health facility to determine whether there was a substantial probability that the defendant would attain the capacity to permit his trial to proceed.

Evans was subsequently returned to FMC Butner for treatment in an effort to restore him to competency. On June 24, 2003, Beeler, Warden of FMC Butner, moved the court to order the forcible medication of Evans in an effort to restore competency. According to Beeler, the staff at FMC Butner had determined that Evans was not dangerous to himself or others nor was he gravely disabled, however, they believed that medication was necessary to restore Evans to competency. Beeler further stated that his psychiatric staff had opined that it was medically appropriate to treat Evans with antipsychotic medication, that this medication would not produce side effects to a degree which would undermine the fairness of Evans's trial and that there was a substantial probability that Evans could be restored to competency with medication.

An evidentiary hearing on this matter was held before the undersigned on October 31, 2003.[3] In addition to the facts set out in the criminal complaint, Dreisbach

---

3. An earlier scheduled hearing on this matter was continued at defense counsel's request to allow him additional time to gather records of Evans's past psychiatric treatment and to obtain an independent psychiatric evaluation of Evans.

testified that Evans made statements to her at the time of his arrest on November 14, 2002. According to Dreisbach, Evans stated that he considered what the government had done as an act of war and that he would "protect his property at any cost."

United States Probation Officer Sumer Taylor–Sargent also testified at the hearing. Sargent stated that in preparing the Pretrial Services Report for Evans's original bond hearing she had conducted a criminal record review. This record review revealed that Evans had been found guilty of brandishing a firearm in 1988.

Evans's son, Eric Evans, also testified at the hearing. Eric Evans stated that he had never known his father to physically attack anyone. Despite the fact that Eric Evans admitted that he knew that his father had a long history of treatment for psychiatric problems, including several stays for inpatient treatment, he stated that he did not think that his father actually suffered from any psychiatric problem. Instead Eric Evans stated that, in his opinion, Evans was "just too intelligent." According to Eric Evans, Evans had a number of black powder firearms stolen from his home in early 2002.

Ann Ayers also testified at the hearing. Ayers testified that she and her husband had rented two trailer spaces at their Mt. Airy, North Carolina, mobile home park to Evans since 1997. She stated that prior to Evans's arrest she saw him every two to three days. She stated that she had known of Evans to stay overnight on occasion in one of these trailers, but that he did not reside there on a regular basis. Ayers stated that, to her knowledge, Evans used the trailers to store items that he sold at flea markets. Ayers testified that she had never known Evans to be violent.

Dr. Margaret Robbins, M.D., a psychiatrist, also testified at the hearing. A copy of Dr. Robbins's curriculum vitae and a report she prepared for defense counsel were admitted into evidence at the hearing. Dr. Robbins testified that she had reviewed medical and psychiatric records of Evans's prior evaluation and treatment from the Veterans Administration, Central State Hospital, Southwestern State Hospital and FMC Butner. Dr. Robbins also testified that she met with Evans on October 27, 2003, at the Bristol City Jail for the purpose of performing a psychiatric evaluation.

Dr. Robbins stated that, based on her review of Evans's records and her evaluation, she agreed that Evans suffered from paranoid schizophrenia of a long-standing nature. She also agreed that, as a result of this condition, Evans suffered from certain delusions, which would make it impossible for him to assist his counsel in the defense of the charge against him. Dr. Robbins stated that Evans believes that he is a prisoner of war and that the government is not to be trusted. She further stated that Evans has no confidence that his attorney is working for his best interest. As a result, Dr. Robbins stated that she also agreed that Evans was not competent to stand trial.

Dr. Robbins further testified that, in her opinion, medication with antipsychotic medication would not prevent Evans from continuing to suffer from these delusions, and, therefore, would not restore him to competency. She did state that she believed that the medication would make Evans behave in a calmer manner. Dr. Robbins stated that she based these opinions on the fact that attempts to medicate Evans in the past had not rid him of his delusions. Dr. Robbins did admit, however, that the records she had reviewed revealed that Evans had never been medicated for any extended period of time.

Dr. Robbins stated that during her evaluation she found Evans to be very verbally loud and opinionated. She stated, however, that she did not view him as dangerous or assaultive. Dr. Robbins stated that, while it was very difficult for a psychiatrist to predict future behavior, she believed that Evans's past behavior was the best indication of how he could be expected to act in the future. She also stated that she did not believe that Evans should possess a firearm.

## II.

Earlier this year, the United States Supreme Court in *Sell v. United States,* 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003), held that a defendant who has been found incompetent to stand trial may be involuntarily medicated in an effort to restore competency only in "rare" circumstances. 123 S.Ct. at 2184. The Court in *Sell* recognized that it previously had held that a defendant has a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs. 123 S.Ct. at 2183 (citing *Riggins v. Nevada,* 504 U.S. 127, 134, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992)). The Court noted that only an "essential" or "overriding" state interest could overcome this liberty interest. 123 S.Ct. at 2183 (quoting *Riggins,* 504 U.S. at 134, 112 S.Ct. 1810.) The Court held that "the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." 123 S.Ct. at 2184.

■ The Court in *Sell* set out four factors that must be established before a court can order that a defendant be involuntarily medicated to restore competency. 123 S.Ct. at 2184–85. First, the court must find that *important* governmental interests are at stake. 123 S.Ct. at 2184. Second, the court must find that involuntary medication will *significantly further* those important governmental interests in that the medication must be substantially likely to render the defendant competent and must be substantially unlikely to cause side effects that will interfere significantly with the defendant's ability to assist in his trial defense. 123 S.Ct. at 2184. Third, the court must find that involuntary medication is *necessary* to further those governmental interests in that alternative, less intrusive treatments are unlikely to restore competency. 123 S.Ct. at 2185. Fourth, the court must find that the administration of the medication is medically appropriate. 123 S.Ct. at 2185. The Court *in Sell* also held that before considering whether the government should be allowed to involuntarily medicate a defendant to restore competency, the court should consider whether involuntary medication was warranted for another purpose, such as when the defendant poses a danger to himself or others or when medication is necessary to treat a defendant who is gravely ill. 123 S.Ct. at 2185.

In this case, the government's own experts opined that Evans did not pose a danger to himself or others while incarcerated and was not considered gravely ill. Therefore, I find that, at this time, no other grounds exist to support the involuntary medication of Evans other than for the sole purpose of establishing competency. That being the case, I must analyze the facts and circumstances of this case to determine whether each of the four factors set forth in *Sell* has been established. I

begin this analysis by considering whether important governmental interests are at stake.

The Court in *Sell* recognized that the "Government's interest in bringing to trial an individual accused of a *serious* crime is important... whether the offense is a serious crime against the person or a serious crime against property." 123 S.Ct. at 2184 (emphasis added). The Court in *Sell* did not, however, offer any definition or explanation of what it considered to be a "serious" crime. Furthermore, I have found only one opinion issued since the Court's ruling in *Sell* in which a lower federal court has addressed the issue. *See United States v. Kourey*, 276 F.Supp.2d 580 (S.D.W.Va.2003).

In *Kourey*, Warden Beeler of FMC Butner sought court approval to forcibly medicate a defendant charged with violating the terms and conditions of a period of supervised release imposed on a conviction for violating 18 U.S.C. § 1361 for breaking a glass door at a United States Courthouse. 276 F.Supp.2d at 581–83. The court found that the forcible administration of medication to restore competency was inappropriate at that time in that the defendant had not been remanded to the custody of the Attorney General for treatment, but rather merely for an evaluation regarding competency. *Kourey*, 276 F.Supp.2d at 585. Nonetheless, the court also found that, based on the fact that the defendant was charged with violating the terms and conditions of a period of supervised release imposed for the commission of a misdemeanor, the defendant was not facing "serious criminal charges." *Kourey*, 276 F.Supp.2d at 585.

While the Supreme Court's opinion in *Sell* gives no guidance as to what crimes should be considered as "serious" for the purpose of the forcible administration of medication to restore competency, the Court has addressed the issue of what amounts to a serious crime within the context of the Sixth Amendment right to jury trial. In that context, the Court has held that the right to trial by jury extends only to persons charged with "serious" offenses. *See Duncan v. Louisiana*, 391 U.S. 145, 154–55, 157–58, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The Court has further held that "the penalty authorized for a particular crime is of major relevance in determining whether it is serious or not...." *Duncan*, 391 U.S. at 159, 88 S.Ct. 1444. That being the case, the Court has defined serious offenses for purposes of determining the right to trial by jury as those offenses for which a term of imprisonment exceeding six months may be imposed. *See Baldwin v. New York*, 399 U.S. 66, 68–69, 90 S.Ct. 1886, 26 L.Ed.2d 437 *Duncan*, 391 U.S. at 159–60, 88 S.Ct. 1444. In reaching this conclusion, it appears that the Court was persuaded at least in part by the fact that, going back as far as the English common law, the right to trial by jury historically had been extended to any person charged with a crime other than a petty offense. *Duncan*, 391 U.S. at 160, 88 S.Ct. 1444.

■ The cases outlined above do not provide the court with any definitive standard for determining whether the defendant in this case is charged with a "serious crime" warranting the forcible administration of medication to restore competency. Nonetheless, they do offer guidance to the court in that they suggest that the court's decision should be based on the seriousness of the penalties that may be imposed should the defendant be convicted and not, as the government argues, on the facts and circumstances of the alleged offense. In this case, Evans is charged with forcibly intimidating and interfering with an employee of the United States while engaged in the performance of her official duties in

violation of 18 U.S.C. § 111(a)(1), a misdemeanor, for which the maximum penalty would be a term of imprisonment of up to one year and a fine up to $100,000.00. *See* 18 U.S.C.A. § 111(a)(1) (West 2000 & Supp.2003); 18 U.S.C.A. § 3571(b)(5) (West 2000). In light of the Supreme Court's Sixth Amendment precedent defining a serious offense as any offense for which the defendant may be sentenced to more than six months' imprisonment, I find that the offense with which Evans is charged is a serious offense.

This finding, in and of itself, however, does not necessitate a finding that an important government interest is at stake. The Court in *Sell* listed factors other than the seriousness of the offense for a court to consider in determining if an important government interest was a stake. In fact, the Court recognized that "[s]pecial circumstances" might lessen the importance of the government's interest in prosecution. 123 S.Ct. at 2184. In particular, the Court noted that the potential for future confinement would argue against the need for prosecution. 123 S.Ct. at 2184. More specifically, the Court recognized that a defendant's refusal to take medication voluntarily could lead to a lengthy confinement in a mental health institution, thereby diminishing the risks of releasing without punishment a person who has committed a serious crime. 123 S.Ct. at 2184. The Court also noted that the government's interest in prosecution would be lessened if a defendant already had been confined for a significant amount of time for which the defendant would receive credit toward any sentence ultimately imposed. 123 S.Ct. at 2184. Another district court also has suggested that the court may consider whether a delay in the prosecution of a defendant would prejudice the government in that the memories of its witnesses were likely to fade or that its witnesses might become unavailable.

*United States v. Miller,* 292 Supp.2d 163 (D.Me.2003).

■ Based on these factors, I find that there is not an important government interest at stake in pursuing the prosecution of Evans on this charge. The uncontradicted psychiatric evidence before the court shows that Evans suffers from a long-standing serious mental illness, paranoid schizophrenia, and that this illness causes Evans to suffer from delusions. While the court has heard contradictory evidence as to whether treatment of Evans's delusions with antipsychotic medication would be successful, it is only reasonable to conclude that, without such treatment, Evans will continue to suffer from this illness and, thus, these delusions, for the rest of his life. While the issue of whether Evans should be released or continue to be detained is not currently before the court, it appears that Evans's refusal to voluntarily take medication to treat this illness may result in his continuing confinement in a mental health institution, thereby lessening any danger he may pose to others or any risk that he may flee before prosecution. Furthermore, Evans was arrested on November 14, 2002, and has remained in custody since that time. Thus, were Evans convicted and sentenced to the maximum term of imprisonment for the crime charged, he would not serve any additional term of imprisonment because he would receive credit for the time he has remained in custody since his arrest. Also, the government has produced no evidence that a continued delay in trial would prejudice its ability to eventually prosecute Evans.

### III.

Based on the above, I will deny Warden Beeler's motion to allow the forcible medication of Evans to restore him to compe-

tency for trial. Based on the evidence before the court, I further find that Evans is not competent to stand trial at this time and is unlikely to be restored to competency in the foreseeable future without treatment with antipsychotic medication.

An appropriate order shall be entered.