United States Court of Appeals
Fifth Circuit

**F I L E D**

November 21, 2005

Charles R. Fulbruge III
Clerk

REVISED DECEMBER 14, 2005

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-31137

UNITED STATES

Plaintiff - Appellee

versus

DEDRICK REGINALD WHITE

Defendant - Appellant

Appeal from the United States District Court
for the Middle District of Louisiana

Before HIGGINBOTHAM, WIENER & DENNIS, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Dedrick Reginald White appeals an order of the district court that he be involuntarily medicated. Concluding that this case is not ripe for appellate review because the Plaintiff-Appellee the United States failed to exhaust the administrative procedures required, we vacate and remand.

## I. FACTS & PROCEEDINGS

White was indicted on charges of (1) assaulting a postal carrier, and in so doing placing the postal carrier in jeopardy by the use of a semi-automatic rifle, (2) using, carrying, and brandishing that rifle during the assault, and (3) being a felon in

possession of a firearm.[1]  If convicted, White faces a mandatory minimum sentence of 15 years imprisonment.  At his initial appearance, White stipulated to detention in East Baton Rouge Parish Prison ("EBRPP").

White then filed a motion for a mental examination to determine his competency to stand trial.  The district court ordered Dr. John Bolter of Baton Rouge to conduct a psychiatric and psychological examination, but White refused to participate in the examination.  White was then transferred to the Federal Medical Center in Fort Worth, Texas, for an examination.  The staff at the Medical Center was unable to render an opinion as to White's competency because White again refused to participate in the examination.  Finally, White was transferred to the Federal Medical Center in Butner, North Carolina, where the staff evaluated him and concluded that he is incompetent to stand trial.  Accordingly, on August 19, 2002, the district court found White incompetent to stand trial and committed him to the custody of the Attorney General for hospitalization and treatment according to the provisions of 18 U.S.C. § 4241.

The government subsequently had White transferred back to EBRPP and sought an order of the court to have White medicated involuntary.  Two grounds were advanced: (1) White is dangerous to himself and others, and (2) medication is necessary and appropriate

---

[1]See 18 U.S.C. §§ 2114, 924(c)(1)(A)(ii), and 922(g)(1).

to render him <u>competent</u> to stand trial.  The district court held that involuntary medication was warranted on both grounds.

## II. ANALYSIS

### A.   Jurisdiction

Involuntary medication orders such as the one at issue here conclusively decide the disputed question and resolve an important issue.[2]  We therefore have jurisdiction under the collateral order doctrine over White's appeal of the district court's order authorizing prison authorities to administer antipsychotic medication to him on an involuntary basis.[3]

### B.   Standard of Review

We review the district court's findings of fact for clear error and conclusions of law <u>de novo</u>.[4]

### C.   Applicable Law

Under 18 U.S.C. § 4241, if a district court finds a criminal defendant incompetent to stand trial, the court must commit the defendant to the custody of the Attorney General.[5]  Then, the Attorney General must hospitalize the defendant in "a suitable facility" for a time (1) sufficient to determine whether the

---

[2]<u>Sell v.U.S.</u>, 539 U.S. 166, 176-77 (2003).

[3]<u>Id.</u>

[4]<u>U.S. v. City of Jackson, Miss.</u>, 359 F.3d 727, 731 (5th Cir. 2004).

[5]18 U.S.C. § 4241(d).

3

defendant will regain competence within a reasonable time, and, if so, (2) for an additional period until the defendant's "mental condition is so improved that trial may proceed," so long as "the court finds that there is a substantial probability" that the defendant will regain competence.[6]

Although inmates have a significant liberty interest in avoiding the administration of unwanted medication, prison officials may administer such medication under limited circumstances to, <u>inter alia</u>, render the inmate non-dangerous or competent to stand trial.[7] "Title 18 U.S.C. § 4241... and federal court decisions require that certain procedures be followed" before the medication is involuntarily administered to a person in the custody of the Attorney General.[8] 28 C.F.R. § 549.43 outlines the "administrative due process procedures" that "must be provided to the inmate" and "must be followed after a person is committed for hospitalization and prior to administering involuntary treatment, including medication."[9]

Specifically, when an inmate refuses medication, he is entitled to an <u>administrative</u> hearing at the facility to determine

---

[6]<u>Id.</u> at § 4241(d)(1)-(2).

[7]<u>Washington v. Harper</u>, 494 U.S. 210, 222, 227 (1990) (dangerousness); <u>Sell</u>, 539 U.S. at 179-80 (competence).

[8]28 C.F.R. § 549.43.

[9]<u>Id.</u>

4

whether he may be medicated against his will.[10] The facility staff must inform the inmate of "the date, time, place, and purpose of the hearing, including the reasons for the medication proposal," and "a psychiatrist who is not currently involved in the diagnosis or treatment of the inmate" must conduct the hearing.[11] In addition, the inmate's treating psychiatrist or clinician "must be present at the hearing and must present clinical data and background information relative to the need for medication."[12] The inmate has the right, inter alia, "to appear at the hearing, to present evidence, to have a staff representative, [and] to request witnesses."[13] At the conclusion of the hearing, the conducting psychiatrist must determine whether "medication is necessary in order to attempt to make the inmate competent to stand trial or is necessary because the inmate is dangerous to [him]self or others" and "prepare a written report regarding the decision."[14] The facility must provide a copy of the report to the inmate, and the inmate may appeal the decision to the facility administrator.[15] "The administrator shall ensure that the inmate received all

---

[10]Id. at § 549.43(a).

[11]Id. at § 549.43(a)(1) and (3).

[12]Id. at § 549.43(a)(4).

[13]Id. at § 549.43(a)(2).

[14]Id. at § 549.43(a)(5).

[15]Id. at § 549.43(a)(6).

5

necessary procedural protections and that the justification for involuntary treatment or medication is appropriate."[16]

Although § 4241 does not expressly mandate exhaustion of administrative procedures, "the jurisprudential doctrine of exhaustion [still] controls."[17] This "long settled rule of judicial administration" serves several important purposes.[18] For example, it permits the agency to develop the factual background of the case and apply its expertise, and, at the same time, it conserves scarce judicial resources.[19] Furthermore, it prevents general disregard for agency procedures that could ultimately weaken the agency's effectiveness.[20] Consequently, a court should excuse the failure to exhaust administrative procedures only "in extraordinary circumstances."[21] Extraordinary circumstances typically arise when the administrative process would be inadequate or futile, the claimant challenges the legality of the administrative process itself, or the claimant has advanced a constitutional challenge that would remain after the completion of the administrative

---

[16]Id.

[17]Taylor v. U.S. Treasury Dept., 127 F.3d 470, 475 (5th Cir. 1997).

[18]Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938).

[19]Taylor, 127 F.3d at 476-77.

[20]Id.

[21]Id. at 477.

6

process.[22]

**D.  Merits**

In this case, the government made an end run around the regulatory scheme laid out in § 549.43 and sought an order directly from the district court authorizing involuntary medication, first on the basis of dangerousness, and, in the alternative, on the basis of competence to stand trial.  The government advances no extraordinary circumstances to excuse its failure to exhaust the administrative procedure in § 549.43.  In fact, the government advances no reason at all to justify its failure to follow the prescribed procedure.  Moreover, in disregarding the administrative procedure required by § 549.43, the government ignores the unequivocal, mandatory language of the regulation that is specifically tailored to protect the inmate's due process rights. In light of the existing administrative procedure and the government's failure to provide any explanation whatsoever for bypassing that process, it was error for the district court to make the initial determination to medicate White involuntarily.[23]  We therefore remand the action to the district court with instructions

---

[22]Id.

[23]See U.S. v. Morgan, 193 F.3d 252, 263 (4th Cir. 1999) (observing that "§ 549.43 requires that a determination of whether to forcibly medicate an inmate be made in the context of an administrative hearing").

to order a due process hearing in accordance with § 549.43.[24]

The government insists that even if we cannot review the district court's order to medicate White involuntarily on grounds of dangerousness, we may nevertheless review that court's order to medicate White to restore his competency to stand trial. The government's position is grounded in the Supreme Court's observation in <u>Sell</u> that deciding to administer forced medication to restore competence involves "quintessentially legal questions of trial fairness and competence."[25] The government therefore contends that, in making this statement, the Supreme Court overturned the regulatory scheme laid out in § 549.43 as to the issue of involuntary medication to render a defendant competent for trial. We disagree. The <u>Sell</u> Court was addressing an inmate's <u>substantive</u> right to be free from unwanted medication —— not the <u>procedural</u> protections of that right. We seriously doubt that the Court would thus eviscerate an entire regulatory scheme designed to protect an inmate's due process rights by implication.

Ultimately, however, we need not address the government's contention here, given the Supreme Court's admonition in <u>Sell</u> to

---

[24]See <u>U.S. v. Kourey</u>, 276 F.Supp.2d 580, 581 (S.D.W.Va. 2003) (noting that "[t]he decision whether or not [to medicate the defendant] is best left to the medical professionals at the Butner Federal Medical Center acting in accordance with established administrative due process procedures" and that judicial review "has only been deemed appropriate after exhaustion of the administrative procedure").

[25]539 U.S. at 182.

8

consider whether involuntary medication is appropriate on grounds of dangerousness <u>before</u> considering whether doing so would be appropriate to restore an inmate's competence to stand trial.[26] The Court reasoned that medicating an inmate to alleviate dangerousness will, in most cases, obviate the need to do so to restore his competency, noting that the dangerousness inquiry is more "'objective and manageable'" than the competency inquiry.[27] Importantly, observed the <u>Sell</u> Court, "medical experts may find it easier to provide an informed opinion about whether, given the risk of side effects, particular drugs are medically appropriate to control a patient's potentially dangerous behavior... than to try to balance the harms and benefits related to the more quintessentially legal questions of trial fairness and competence."[28] Furthermore, "courts typically address involuntary medical treatment as a civil matter" and justify it on dangerousness grounds.[29]

Even if the government's position has merit, it is of no moment in this proceeding. Nothing in <u>Sell</u> casts doubt on §

---

[26]<u>Id.</u> at 183; <u>U.S. v. Morrison</u>, 415 F.3d 1180, 1185 (10th Cir. 2005) (remanding action to district court to consider involuntary medication to render the inmate non-dangerous before considering it to render the inmate non-dangerous).

[27]<u>Sell</u>, 539 U.S. at 182, 183 (quoting <u>Riggins v. Nevada</u>, 504 U.S. 127, 140 (1992) (Kennedy, J., concurring)).

[28]<u>Id.</u> at 182.

[29]<u>Id.</u> at 182 (citing, <u>inter alia</u>, various state statutory schemes and 28 C.F.R. § 549.43).

549.43's applicability to the dangerousness inquiry. In fact, when it reviewed a state's involuntary medication administrative procedure that is substantially similar to § 549.43, the Court observed that "an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge."[30]

### III.  CONCLUSION

As the government bypassed the administrative procedure required under the instant circumstances, the district court's order is not ripe for review. Accordingly, we vacate the district court's order authorizing the involuntary medication of the defendant and remand the case for further proceedings consistent with this opinion, beginning with exhaustion of administrative procedures.

VACATED and REMANDED for further consistent proceedings.

---

[30] Washington v. Harper, 494 U.S. 210, 231 (1990).