**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 11, 2011

Lyle W. Cayce
Clerk

No. 11-50146

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JESSE JOE GUTIERREZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC 1:09-CR-453-1

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.
PER CURIAM[*]:

Defendant Jesse Joe Gutierrez appeals the district court's order that he be involuntary medicated to render him competent to stand trial. He is charged with threatening to kill and inflict bodily harm on President Obama, in violation of 18 U.S.C. § 871; threatening to kill and inflict bodily harm on former Presidents George W. Bush and George H. W. Bush, in violation of 18 U.S.C. § 879; and threatening to assault and murder a Special Agent of the United

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

1

No. 11-50146

States Secret Service with intent to retaliate against the agent on account of the performance of the agent's official duties, in violation of 18 U.S.C. § 115. We VACATE and REMAND for proceedings consistent with this opinion.

I.

Over the course of a few weeks in late 2008, Gutierrez made over 100 phone calls to KVUE, a television station in Austin, Texas, threatening to harm or kill former President George W. Bush, First Lady Laura Bush, Texas Governor Rick Perry, and his wife Anita Perry. He later left a message on the Secret Service voicemail system threatening a Secret Service agent, President Obama, former Presidents George H.W. Bush and George W. Bush, Governor Perry, all law enforcement, and all lawyers. He was arrested the next day and subsequently indicted.

On motion of the government, the district court held a hearing and found Gutierrez incompetent to stand trial. He was admitted to the Mental Health Department at the Butner Federal Correctional Complex in Butner, North Carolina. The staff diagnosed him with schizophrenia, undifferentiated type, observing that Gutierrez displayed grandiose and paranoid delusions, had disorganized speech, and was hostile in interactions with the doctors. They reported that Gutierrez believed he was being conspired against because he was "King Blessed, King of Kings," waiting on word from God to engage in aggressive behavior towards others.

Because Gutierrez refused medication for his schizophrenia, his treatment team, psychiatrist Dr. Kwanna Williamson and psychologist Carlton Pyant, set a hearing to have a neutral psychiatrist determine whether Gutierrez should be involuntarily medicated under *Washington v. Harper*, which permits forced

No. 11-50146

medication after a Bureau of Prisons (BOP) hearing if a person is a danger to himself or others. 494 U.S. 210, 227, 231 (1990). The BOP regulations in place at the time the government sought to medicate Gutierrez (the 1992 regulations) required that the hearing be conducted by a hearing officer, who must be "a psychiatrist who is not currently involved in the diagnosis or treatment of the inmate"; in other words, a neutral psychiatrist. 28 C.F.R. § 549.43(a)(3).[1] Here, the *Harper* hearing was conducted by Dr. Ralph Newman. Dr. Newman submitted a report concluding that forcible medication for dangerousness was not warranted. He was not asked to, and did not, consider whether forcible medication was warranted under *Sell v. United States*, 539 U.S. 166 (2003), to render Gutierrez competent to stand trial for serious, but nonviolent, crimes.[2]

The government then moved the district court for a medical examination and a determination under *Sell*. The defendant opposed the motion, arguing that no drug therapy was required to render him competent for trial and that the government had failed to exhaust the required administrative procedure under the applicable 1992 regulation, 28 C.F.R. § 549.43. Gutierrez's treatment team, Williamson and Pyant, submitted a report to the district court that concluded that treatment with psychotropic medication was substantially likely to render Gutierrez competent to stand trial with minimal detrimental side effects, based

---

[1] Citations to 28 C.F.R. § 549.43 throughout will be to the old regulation requiring a BOP hearing, not to the new version of the regulations.

[2] The Supreme Court in *Sell* held that, as a matter of substantive due process, the Constitution permits the government to administer forcible medication to render a defendant competent to stand trial only when it establishes first, that important governmental interests are at stake; second, that involuntary medication will significantly further those interests; third, that involuntary medication is necessary to further those interests; and fourth, that administration of the drugs is medically appropriate. 539 U.S. at 180-81.

on the fact that Gutierrez had successfully been rendered competent by the use of drug therapy in the past. The doctors opined that alternative, less-intrusive means would be unlikely to restore Gutierrez to competency and that forcible medication was medically appropriate.

At the *Sell* hearing, the district court heard testimony from Dr. Williamson. She testified that Gutierrez had responded favorably to treatment in the past without notable side effects, and it was expected that he would respond beneficially to the same treatment, again without side effects. She also testified that there was no probability that Gutierrez would be restored to competency without medication. Dr. Newman did not testify; nor did any other psychiatrist not involved in Gutierrez's treatment. Gutierrez offered no evidence and stated that he would offer "no contrary testimony with regard to" the *Sell* factors at the hearing in the district court.

The district court concluded that involuntary medication of Gutierrez was justified, rejecting the argument that the court's consideration of this motion was premature because the government failed to exhaust administrative procedures under the 1992 regulation. Accordingly, the court entered an order compelling Gutierrez's involuntary medication. This appeal followed.

## II.

In reviewing a district court's order to medicate a defendant forcibly, this court reviews findings of fact for clear error and conclusions of law *de novo*. *United States v. White*, 431 F.3d 431, 433 (5th Cir. 2005). As such, we review *de novo* whether the government has exhausted administrative processes.

The government concedes that it did not hold an administrative hearing on competency at the BOP. It argues, however, that it was not required to do so

No. 11-50146

because *Sell* implicitly overruled the 1992 regulations. The government further argues that it should not have had to comply with the 1992 regulations because compliance would not have served the purposes of exhaustion and because the BOP had proposed changes that would do away with the administrative process on competency.[3] In the alternative, the government argues that, even if the 1992 regulations were still viable at the time it sought to medicate Gutierrez, its failure to comply should be excused because a BOP hearing would be futile given the specific facts of this case.

### A.

Criminal defendants have a significant liberty interest in avoiding the administration of unwanted medication. *Id.* As such, prison officials may only administer unwanted medication for limited purposes, such as to render the defendant non-dangerous or competent to stand trial. *Sell*, 539 U.S. at 179-80 (competency); *Washington v. Harper*, 494 U.S. 210, 225 (1990) (dangerousness). Given that high standard, the instances when medication is permitted "may be rare." *Sell*, 539 U.S. at 180.

In addition to those substantive due process requirements, an inmate is also entitled to certain procedural due process protections. The 1992 regulations in place at the time the government sought to medicate Gutierrez outlined the "administrative due process procedures" that "must be provided to the inmate," separate and apart from the inmate's substantive due process right to be free from unwanted medication. *White*, 431 F.3d at 433; *see United States v. Morgan*, 193 F.3d 252, 263 (4th Cir. 1999).

---

[3] These proposed regulations have now been adopted, effective August 12, 2011. *See* Psychiatric Evaluation and Treatment, 76 Fed. Reg. 40229, 40232-40233 (July 8, 2011). For additional discussion of these new regulations, see part II.B. and III.

No. 11-50146

The processes laid out in the 1992 regulations were straightforward. Before forcibly medicating an inmate "in order to attempt to make the inmate competent for trial or . . . because the inmate is dangerous," the BOP was required to give notice of "the reasons for the medication proposal." 28 C.F.R. § 549.43(a)(1), (5). It then had to hold an administrative hearing at which the inmate was entitled to appear, present evidence, and have a staff representative. *Id.* at § 549.43(a)(2). The hearing officer must have been "a psychiatrist who is not currently involved in the diagnosis or treatment of the inmate," *id.* at § 549.43(a)(3), and must have made a determination that medication was necessary for the reason for which it is being sought, *id.* at § 549.43(a)(5). In addition, the inmate's treating psychiatrist must have been present at the hearing and provided background information that is pertinent to the need for medication. *Id.* at § 549.43(a)(4). At the conclusion of the hearing, the hearing officer was required to prepare a written report outlining his decision, which would then be given to the inmate, who had the right to appeal the decision to a facility administrator. *Id.* at § 549.43(a)(5), (6). As we recognized in *White*, "the unequivocal, mandatory language of the regulation . . . is specifically tailored to protect the inmate's due process rights." 431 F.3d at 434.

The government concedes that it did not conduct an administrative hearing on competency. It is undisputed that Dr. Newman, the hearing officer at the administrative hearing and the only psychiatrist to participate in the hearing who was not involved in Gutierrez's treatment, considered only dangerousness and recommended that Gutierrez not be medicated. Rather than simultaneously seeking a determination on medication for the purpose of competency, the government bypassed the administrative competency process

and went directly to the district court. As a result of the government's disregard of the 1992 regulations, Gutierrez lost the protections provided therein: notice that the BOP was considering medication for competency, the opportunity to present witnesses on the issue of competency at the hearing, and, importantly, the right to appeal any decision made by the neutral psychiatrist and to have another independent decision-maker review the substance of the psychiatrist's findings. *See generally* 28 C.F.R. § 549.43(a)(1)-(8). Gutierrez never had the opportunity to present his evidence to a hearing officer, not involved in his treatment, tasked with determining whether medication for competency was medically proper at the administrative level. Simply put, the government was required to, but did not, comply with the 1992 regulations.

We have already held that the government must exhaust administrative processes prior to forcibly medicating an inmate. *White*, 431 F.3d at 434. In *White*, the government bypassed the administrative process completely, seeking instead in the first instance an order from the district court that would allow involuntary medication. *Id.* at 432. We addressed two issues in that case: first, whether the Supreme Court implicitly overruled the 1992 regulations in *Sell*, and second, whether the government had to consider dangerousness before competency. Ultimately, however, we did not resolve the first issue, whether *Sell* overruled the 1992 regulations, "given the Supreme Court's admonition in *Sell* to consider whether involuntary medication is appropriate on grounds of dangerousness *before* considering whether doing so would be appropriate to restore an inmate's competence to stand trial."[4] *Id.* at 435.

---

[4] In *Sell*, the Supreme Court noted that the dangerousness inquiry is more "objective and manageable" than the competency question. 539 U.S. at 182. Because medicating an inmate to alleviate dangerousness will often do away with the need to do so for competency, the Court required the BOP to

No. 11-50146

Before resolving *White* on the second ground, however, we considered whether *Sell* had overruled the 1992 regulations. We noted that *Sell* distinguished the competency question, which requires a "balanc[ing of] harms and benefits related to the more quintessentially legal questions of trial fairness and competence," and the dangerousness question, which is more "objective and manageable." 539 U.S. at 182. Based on that distinction, the government argued in *White*, and argues here, that the Supreme Court implicitly required that the legal determination of competency be made by a district court, thus overruling the regulatory scheme in 28 C.F.R. § 549.43. As we stated in *White*, "The *Sell* Court was addressing an inmate's *substantive* right to be free from unwanted medication—not the *procedural* protections of that right." *White*, 431 F.3d at 435. "We seriously doubt that the Court would thus eviscerate an entire regulatory scheme designed to protect an inmate's due process rights by implication."[5] *Id.*; *see also Morgan*, 193 F.3d at 260.

Admitting that *Sell* did not overrule the 1992 regulations explicitly, the government here asks that we be the first court to hold that it did so by implication. Consistent with our statements in *White*, we now hold that *Sell* did not overrule the 1992 regulations, and the government was required to comply with them.[6]

---

consider the dangerousness question first. *Id.*

[5] This is particularly so because the Court recognized in *Sell* that the BOP complied with the 1992 regulations. *See* 539 U.S. at 171 (noting that it was reviewing the last of "five hierarchically ordered lower court and Medical Center determinations"). It would be odd indeed for the Court to overrule those regulations when it was not presented with a complaint about them.

[6] The government has routinely advanced this argument in district court proceedings, but it has been consistently rejected, except in the instant case. *See, e.g.*, *United States v. Brooks*, Crim. No. 05-338, 2010 WL 3942720, at *8 (W.D. Pa. Sept. 30, 2010); *United States v. Richardson*, No. 3:08-cr-302-J-

No. 11-50146

Indeed, the bifurcated process provided in the 1992 regulations served a purpose quite apart from the *Sell* substantive due process determination. The BOP made medical findings: whether medication was necessary and effective to render a defendant competent. *See* 28 C.F.R. § 549.43(a)(5). The district court, on the other hand, made a legal determination: whether the person could, consistent with the Constitution and substantive due process, be forced to receive medication. *Sell*, 539 U.S. at 176. In those rare cases in which the government could forcibly medicate an inmate to render him competent for trial, the government first must have produced evidence to satisfy a psychiatrist not involved in his treatment that medication was justified as a medical determination, and second, must have met the high legal standards in district court.

The government nonetheless argues that, because requiring it to comply with the regulations would not serve the general purposes of exhaustion of administrative remedies, it should never have been required to give Gutierrez a BOP hearing. We have already rejected that argument, holding that, "[a]lthough § 4241 does not expressly mandate exhaustion of administrative procedures, 'the jurisprudential doctrine of exhaustion [still] controls,'" given the purposes of exhaustion. *White*, 431 F.3d at 434 (quoting *Taylor v. U.S. Treasury*

---

32TEM, 2009 WL 4730563, at *2 (M.D. Fla. Dec. 7, 2009); *United States v. Milliken*, No. 305-CR6J-32TEM, 2006 WL 2945950, at *3 (M.D. Fla. Oct. 13, 2006); *United States v. Algere*, 457 F. Supp. 2d 695, 698 (E.D. La. 2005) (noting that the district court had previously denied the government's motion for involuntary medication because the 1992 regulations require the competency question to be made first "in the context of an administrative hearing," which the government had not done); *United States v. Barajas-Torres*, No. CRIM.EP-03-CR-2011KC, 2004 WL 1598914, at *1 n.2 (W.D. Tex. July 1, 2004); *see also United States v. Gonzalez-Aguilar*, 446 F. Supp. 2d 1099, 1104-06 (D. Ariz. 2006) (denying the BOP's request to forcibly medicate the inmate because it had not followed administrative processes). In all of those cases, the government failed to follow the 1992 regulations, and the district courts remanded the cases for failure to exhaust.

*Dep't*, 127 F.3d 470, 475 (5th Cir. 1997)) (alteration in original).   Here, for example, the district court did not have the benefit of a fully-developed administrative record of the relevant medical considerations to inform its decision of whether forced medication of Gutierrez violated the Constitution.

Further, the fact that at the time the BOP sought to medicate Gutierrez, it had proposed amendments to the regulations that would do away with the need for a hearing on competency does not change the result here.   Those proposed amendments had not yet been adopted.   While the BOP "was not obligated to impose upon [itself] these more rigorous substantive and procedural standards, . . . having done so [it] could not, so long as the Regulations remained unchanged, proceed without regard to them."   *Service v. Dulles*, 354 U.S. 363, 388 (1957) (relied upon by *Morgan*, 193 F.3d at 266-67, in vacating a district court order allowing forcible medication).   An agency cannot obtain a *de facto* rule change by complying with a *proposed* rule, particularly when it influences a criminal defendant's due process rights.   It is "an unremarkable proposition" that an agency must follow its own regulations.   *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979); *see United States v. Nixon*, 418 U.S. 683, 695 (1974); *Morgan*, 193 F.3d at 266 ("We have recognized that an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination.").   The government failed to exhaust the administrative processes outlined in the 1992 regulations, as it was required to do under *White*.

## B.

The government alternatively argues that its failure to comply with the 1992 regulations should be excused because remanding the case to the BOP

would be futile given the particular facts of this case.  A court should "excuse the failure to exhaust administrative procedures only 'in extraordinary circumstances,'" such as "when the administrative process would be inadequate or futile, the claimant challenges the legality of the administrative process itself, or the claimant has advanced a constitutional challenge that would remain after the completion of the administrative process."  *White*, 431 F.3d at 434; *see Dawson Farms, LLC v. Farm Serv. Agency*, 504 F.3d 592, 606 (5th Cir. 2007).  The government argues that "it would serve no purpose to remand for an administrative BOP hearing," because Gutierrez only challenges the first *Sell* factor, whether an important governmental interest is at stake, which can only be determined by a district court.  In other words, the government argues that any error was harmless because the end result would be the same.

The government argues the wrong standard.  We do not look to the result of the proceeding in determining whether the failure to exhaust should be excused.  *White*, 431 F.3d at 434.  In *White*, for example, we held that the failure to exhaust administrative remedies was not excused without any discussion of the probable result after remand, or even discussion of whether the inmate challenged the involuntary medication order on any substantive basis.  *Id.*; *see also In re Hearst Newspapers, L.L.C.*, 641 F.3d 168, 181-83 (5th Cir. 2011) (distinguishing the newspaper's claim regarding the failure to provide adequate procedures from its substantive claim about right of access to a criminal trial).  The inmate's right to procedural due process stands apart from his substantive right not to be forcibly medicated unless the government meets the four *Sell* factors.  That the inmate makes only limited substantive due process arguments on appeal does not deprive him of his right to procedural due process in the first

instance.  *See White*, 431 F.3d at 434.

Further, in determining futility, the question is whether "these procedures would have been inadequate or futile *had [they] been timely and diligently pursued*," not whether it is futile to remand the case after appeal.  *Dawson Farms*, 504 F.3d at 607 (emphasis added).  For example, the Supreme Court has held that it would be futile to require a federal prisoner to exhaust administrative processes because he was seeking only money damages, which the agency had no authority to award.  *McCarthy v. Madigan*, 503 U.S. 140, 149-50 (1992).  Given that the administrative process imposed short filing deadlines resulting in a high risk of forfeiture, "the prisoner seeking only money damages has everything to lose and nothing to gain."  *Id.* at 152.  Similarly, the Fifth Circuit has excused exhaustion when the remedy provided was by a review body that "does not exist and, in fact, has not existed since 1981, long before Hall's dispute over benefits began."  *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 232 (5th Cir. 1997) (emphasis omitted).  In those cases, the inadequacy of the institutions themselves rendered exhaustion futile.

Here, however, the government does not point to any institutional inadequacy.  Rather, the 1992 regulations set forth an administrative process well equipped to make the relevant medical determinations.  Consistent with the regulations, the government could have requested that the BOP consider medication for competency alongside dangerousness.  Requiring the government to do so would not be futile.

Nor does the fact that the proposed regulations have now been adopted constitute an extraordinary circumstance excusing the government's failure to follow the old ones.  The government argues in essence that no consequences

should attach to its failure to follow the 1992 regulations because it has changed the regulations, effective August 12, 2011, after the date it sought to medicate Gutierrez. We cannot allow agencies to flout in-force regulations and then excuse their own non-compliance by adopting new regulations. *See Hardy Wilson Mem'l Hosp. v. Sebelius*, 616 F.3d 449, 461 (5th Cir. 2010) ("Despite our substantial deference to an agency's interpretation of the scope or application of its own regulations, . . . we cannot allow [the agency] to ignore its own regulation in an attempt to save its imperfect/unsatisfactory decision-making in this case.") (internal quotation marks omitted). Affirming the district court order based on the new regulations, as the government requests, would allow forcible medication even though Gutierrez specifically and timely challenged the BOP's failure to comply with the old regulations. There are simply no "extraordinary circumstances" to excuse the government's failure to exhaust. *See White*, 431 F.3d at 434 (quoting *Taylor*, 127 F.3d at 477).

## III.

We now turn to consider whether the new regulations should apply on remand. The new regulations do not expressly require that they be applied to matters remanded to the agency. *See Hernandez-Rodriguez v. Pasquarell*, 118 F.3d 1034, 1042 (5th Cir. 1997). The government has submitted further briefing arguing that we should nonetheless apply the new regulations to this case and affirm the district court's order. If the regulations would operate retroactively, however, the "traditional presumption teaches that [they do] not govern." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994).

Retroactivity analysis is a matter on which judges tend to have "sound instincts" and requires a "commonsense, functional judgment" regarding

"whether the new provision attaches new legal consequences to events completed before its enactment." *Martin v. Hadix*, 527 U.S. 343, 357-58 (1999) (internal quotation marks omitted); *Landgraf*, 511 U.S. at 270. "The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Landgraf*, 511 U.S. at 270.  In making this determination, we are guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations." *Id.*  Here, we look to the government's request that Gutierrez be forcibly medicated, which is "the relevant conduct regulated by the [regulations]" and completed before the adoption of the regulations.  *See Republic of Austria v. Altmann*, 541 U.S. 677, 697-98 (2004).

Importantly, "the mere fact that a new rule is procedural does not mean that it applies to every pending case. . . .  Nor do we suggest that concerns about retroactivity have no application to procedural rules."  *Landgraf*, 511 U.S. at 274-75 & n.29; *Shipes v. Trinity Indus.*, 31 F.3d 347, 349 (5th Cir. 1994).  The applicability of procedural rules depends on "the posture of the particular case." *Landgraf*, 511 U.S. at 275 n.29.  New regulations, even those that are procedural, have an impermissible retroactive effect where their application "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Handley v. Chapman*, 587 F.3d 273, 283 (5th Cir. 2009) (internal quotation marks and citation omitted).

To begin, the new regulations change the nature of the law.  The 1992 regulation required the government to convince a neutral psychiatrist that

forced medication was necessary to render an inmate competent for trial before seeking an order allowing medication in district court, a process that was specifically aimed to protect the inmate's substantive right to be free from forced medication. 28 C.F.R. § 549.43; *White*, 431 F.3d at 435. The new regulation did away with that provision in favor of an adversarial district court proceeding during which a treating, non-neutral psychiatrist testifies on behalf of the government. The Supreme Court has recognized the difference between an adversarial proceeding and a neutral, medical process: "Common human experience and scholarly opinions suggest that the supposed protections of an adversary proceeding to determine the appropriateness of medical decisions for the commitment and treatment of mental and emotional illness may well be more illusory than real." *See Parham v. J.R.*, 442 U.S. 584, 609 (1979). The government recognizes the difference between the adversarial and neutral proceedings, but calls its effect *de minimis*. It is true, as the government posits, that the inmate now has the ability to cross-examine the government's witness or to offer his own expert before the district court, but that proves the point: the proceeding is now adversarial rather than neutral. The new regulations changed the nature of the law.

Indeed, it was upon this neutral proceeding that Gutierrez reasonably relied at the district court, based on the well-settled law that agencies are bound to follow existing regulations.[7] *Nixon*, 418 U.S. at 695. Gutierrez rightfully

---

[7] The government relies on this principle for its argument that it must apply the new regulation on remand, even though it previously ignored its regulations when it sought a district court order to medicate Gutierrez before exhausting its administrative remedies. The government cannot have it both ways—ignoring a regulation when it desires and then insisting on applying a regulation it favors. Regardless, the question of whether a new law has retroactive effect is not determined merely by what rule is now in effect. The new rule is what gives rise to the retroactive question, not what answers it.

expected to be afforded a determination by a neutral psychiatrist prior to the judicial hearing.  In fact, under the 1992 regulations, judicial hearings on forced medication only occurred if, and after, the neutral psychiatrist had found that forced medication was medically justified.  Given these settled procedures, Gutierrez's primary argument before the district court was a challenge of the BOP's failure to provide him an administrative hearing.  It is difficult to argue that Gutierrez did not have a settled expectation that the old regulation would apply when he staked his entire claim on it before the district court.[8]  The new regulation upset Gutierrez's settled expectations about how and when he could be forcibly medicated.

The government argues in response that the new regulation does not upset settled expectations because it is merely a procedural rule; its argument is unavailing, however.  While it is true that there are "diminished reliance interests in matters of procedure," *Landgraf*, 511 U.S. at 275, it is also true that "the mere fact that a new rule is procedural does not mean that it applies to every pending case. . . .  Nor do we suggest that concerns about retroactivity have no application to procedural rules." *Id.* at 274-75 & n.29.  Moreover, the general rule regarding matters of procedure applies to rules that prescribe agency internal procedures, not to rules that protect procedural due process rights and have substantive effect.  *See Handley*, 587 F.3d at 283 (noting that procedural rules apply retroactively only when no "injury or prejudice" results).

---

[8] Gutierrez's settled expectation in the neutral procedure, on which he relied to his detriment, distinguishes this case from those cited by our dissenting colleague.  *Compare Handley*, 587 F.3d at 283 (noting that procedural rules apply retroactively only when no "injury or prejudice" results) *with NCNB Texas Nat'l Bank  v. P & R Invs.*, 962 F.2d 518, 519 (5th Cir. 1992) (applying a new rule that changed the time limits for removal procedures to a pending case where the party seeking removal complied with the new rule and was therefore not prejudiced).  Moreover, the procedural rules in those cases do not protect substantive due process rights, like the ones here.

The new regulations fall into the latter category. They were promulgated pursuant to the Administrative Procedure Act's (APA) notice and comment requirements, which do not apply "to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A). The agency's compliance with the APA demonstrates that the new regulations did more than  simply change the BOP's internal procedures. They did away with an inmate's procedural due process provided by the old regulation. Therefore, the general principle regarding procedural rules does not control here, where the old regulations offered a procedural protection of a substantive right. 28 C.F.R. § 549.43; *White*, 431 F.3d at 435.

In making its argument that the regulations should apply because they are procedural, the government relies on a recent case from the Sixth Circuit, *Combs v. Commissioner of Social Security*, 459 F.3d 640 (6th Cir. 2006) (en banc). That case is distinguishable in two respects. There, the Social Security Administration promulgated a new rule changing the disability presumption applicable to obese people, which went into effect during the pendency of a plaintiff's administrative appeal. *Id.* at 641. The court held that the regulation changed "only the way in which the agency goes about determining" whether the criteria for disability eligibility are present. *Id.* at 647. As such, relying on the general principle that procedural rules do not have retroactive effect, the Sixth Circuit held that the new presumption could be applied to the plaintiff's claim. *Id.* at 646. Here, as discussed above, the change in the regulation did not affect how the agency determines incompetency; rather, it did away with the entire neutral agency process.

Further, the *Combs* court observed that "[n]aturally, if the [Social Security

Administration] had attempted to retry cases that had been adjudicated previously, that might be a different story." *Id.* at 649.  That is exactly what occurred here: the government is attempting to apply the new regulations on remand after deliberately ignoring the old regulation at the first proceeding. Indeed, in concurring in the result in *Combs*, Judge Gilman cautioned that, had the rule change affected the decision because adjudication of the claim was "particularly slow," a person might "have a 'settled expectation' in an administrative decision rendered pursuant to the former regulation." *Id.* at 656 (Gilman, J., concurring).  These statements reinforce our holding here, where the agency was not merely slow in complying with the existing regulation, but outright disregarded it.  Given the existing, longstanding regulation, Gutierrez had a settled expectation that it would be applied in his case.

Finally, we consider the "degree of connection" between the operation of the new rule and the relevant past event. *Landgraf*, 511 U.S. at 270.  Accepting that the new regulation should control on remand would allow the BOP to pardon itself for its disregard of the old regulations—which it did before the new regulation had gone through the rule-making process of notice and comment. *See* 73 Fed. Reg. 33957.  Such evasion not only deprives Gutierrez of his right to the protections of the regulation, as discussed above, but also weakens agency effectiveness and promotes disregard for the law.  *See White*, 431 F.3d at 434; *Wilson Mem'l Hosp.*, 616 F.3d at 461.  Applying the new regulation on remand would "attach[] new legal consequences" to the incompetency procedure; as a result, the new regulations would have improper retroactive effect. *Landgraf*, 511 U.S. at 270.

No. 11-50146

IV.

In light of the administrative procedures in the 1992 regulations, which were controlling at the time the government sought to medicate Gutierrez, it was error for the district court to make the initial determination to medicate Gutierrez involuntarily without a BOP hearing. We therefore vacate the district court's order and remand with instructions to remand the case to the BOP for a due process hearing on competency in accordance with the 1992 regulations. We emphasize, of course, that our holding is narrowly limited to the facts and procedural posture presented here.

VACATED and REMANDED.

No. 11-50146

W. EUGENE DAVIS, Circuit Judge, dissenting:


I.

The majority orders a remand of this case to the Bureau of Prisons (BOP) to hold an administrative hearing even though the regulations relied on no longer require it. This is a formalistic "make work" hearing the majority strains to justify. It serves no worthwhile purpose, resolves no issue in dispute, and is expressly dispensed with by the applicable regulation currently in effect. We should affirm the district court's judgment ordering Gutierrez to undergo forced medication to restore his competence for trial. I therefore respectfully dissent.

Gutierrez was examined and treated at the BOP prison hospital in Butner, North Carolina. As the majority recites, when these proceedings began, the relevant BOP regulations provided for an administrative hearing before a neutral BOP psychiatrist to determine whether it was appropriate to forcibly administer medication to restore a defendant's competency for trial. However, in view of the Supreme Court's decision in *Sell*, the BOP concluded that this hearing was unnecessary. *Sell v. United States*, 539 U.S. 166 (2003). The Supreme Court in *Sell* held that the decision whether the government could forcibly medicate a prisoner to restore competency for trial was a call that must be made by a United States district judge. In light of this holding, the BOP considered that the administrative hearing was unnecessary and dispensed with the hearing called for by the regulation then in force.

While this case was on appeal, the BOP, consistent with its interpretation of *Sell,* amended its regulation effective August 12, 2011, to abolish the

20

requirement for the administrative hearing which the BOP considered duplicative and unnecessary in light of *Sell*. *See* Psychiatric Evaluation and Treatment, 76 Fed. Reg. 40229, 40232-40233 (July 8, 2011). In this case, a United States district judge has made the call as required by *Sell* and ordered forced medication. This order was issued after a full hearing that included essentially all of the procedural protections of a criminal trial including providing counsel to Gutierrez.

Now the majority insists that despite the amended regulation abolishing the requirement for the administrative hearing, the BOP nevertheless must provide that hearing because the previous version of the regulation required it. The majority, therefore, requires that this case be remanded to the BOP to provide that hearing. Two very good reasons make the duplicative hearing by the BOP unnecessary: (1) the August 12 amendment to the BOP regulations abolishing the requirement for this administrative hearing is a procedural change that applies to this and all other pending cases; (2) in the full hearing before the district court Gutierrez presented no evidence and made no argument to challenge the evidence presented by the government that he is mentally incompetent or that it is appropriate to forcibly medicate him. He argued that the BOP failed to provide him the administrative hearing required by the regulations. On appeal, that is the sole issue Gutierrez raises through his appointed counsel, the federal public defender. Gutierrez, therefore, points to no factual issue falling within the expertise of a BOP neutral psychiatrist that he would raise even if he were granted this duplicative administrative hearing.

No. 11-50146

DISCUSSION

A.

The case law does not support the majority's conclusion that the amendment to the BOP regulations does not apply to this and other pending cases.

Consistent with the Supreme Court's decision in *Sell*, the relevant BOP regulation was amended effective August 12, 2011 to provide that BOP administrative hearing procedures do "not apply to the involuntary administration of psychiatric medication for the sole purpose of restoring a person's competency to stand trial" because "[o]nly a Federal court of competent jurisdiction may order the involuntary administration of psychiatric medication for the sole purpose of restoring a person's competency to stand trial." *Id.* at 40233.

In supplemental briefing requested by this court, Gutierrez argues that the administrative hearing required under the old regulations should apply if this case is remanded because to hold otherwise would result in an impermissible retroactive application of the new regulation. The government argues that the new regulation should apply because it affects procedure only and does not affect Gutierrez's substantive rights. Both parties cite to *Landgraf v. USI Film Products et al,* 511 U.S. 244 (1994), as the rule that governs this analysis. The majority has (in my judgment erroneously) accepted Gutierrez's argument.

In *Landgraf*, a female worker filed a timely suit under Title VII of the Civil Rights Act of 1964 alleging sexual harassment. Under statutory provisions in effect at the time, a bench trial was held at which the district court concluded

that sexual harassment did occur. However the district court also held that the plaintiff was not constructively discharged and dismissed the complaint because her employment had not been terminated in violation of Title VII. While her appeal was pending, the Civil Rights Act of 1991 was enacted. The 1991 Act for the first time created a right to recover compensatory and punitive damages for certain violations, including violations of Title VII, and further provided the right to trial by jury. The statute stated that unless otherwise specified, the act would take effect upon enactment. The Supreme Court affirmed this court's rejection of the plaintiff's argument that the amended act applied and the case should be remanded for a jury trial under the 1991 Act.

The Court, in a detailed discussion, gave examples of the types of cases in which the presumption against retroactivity applies and those in which it did not. With respect to changes in procedural rules, the Court stated:

> Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity. For example, in *Ex parte Collett,* 337 U.S. 55, 71, 93 L.Ed. 1207, 69 S.Ct. 944 (1949), we held that 28 U.S.C. § 1404(a) governed the transfer of an action instituted prior to that statute's enactment. We noted the diminished reliance interests in matters of procedure. 337 U.S. at 71. Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive. Cf. *McBurney v. Carson,* 99 U.S. 567, 569, 25 L.Ed. 378 (1879).

*Id.* at 275. The Court contrasted other types of statutory changes where the presumption of non-retroactive application generally applies:

> When, however, the statute contains no such express command, [of retroactive applicability] the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair

rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280. The Court then applied these principles to the changes in Title VII that were before it.

Two provisions of § 102 may be readily classified according to these principles. <u>The jury trial right set out in § 102(c)(l) is plainly a procedural change of the sort that would ordinarily govern in trials conducted after its effective date</u>. If § 102 did nothing more than introduce a right to jury trial in Title VII cases, the provision would presumably apply to cases tried after November 21, 1991, regardless of when the underlying conduct occurred.

*Id.* at 280-81 (underlining added). Because the damages provision in § 102(b)(1) of the 1991 statute allowing recovery for the first time of compensatory and punitive damages were substantive changes and fell "clearly on the other side of the line," the entirely of §102 could only be applied prospectively. *Id.* at 281. Thus the court made it clear that if the only change Congress had made in § 102 had been to grant a jury trial instead of a bench trial, this change would have applied to proceedings conducted after its enactment regardless of when the underlying conduct occurred or when the action was filed.

As applied to Gutierrez, the change in the BOP's regulations, eliminating the requirement of an administrative hearing and confirming that the district court would decide the propriety of forced medication to return competency for trial, is clearly a change to a procedural rule. This amendment is analogous to the amendment addressed in *Landgraf*, which allowed a jury instead of a judge to decide fact issues in a Title VII case. The revised regulation does not alter the

standard under which the accused may be medicated to render him competent to stand trial.  It only changes the process in which that question is considered by eliminating the BOP's role in the process and confirming that after *Sell* the district court is the sole decision maker.  As in *Landgraf*, the amended BOP rule applies to proceedings conducted after August 12, 2011, regardless of when the action was filed or the underlying conduct occurred.  Thus, if we remand this case to the BOP, the amended regulation should apply.

We followed similar reasoning in *Hartford Casualty Ins. Co. v. FDIC,* 21 F.3d 696, 701 (5th Cir. 1994).  In that case a new statute changed the forum authorized to review FDIC rulings regarding deposit insurance from district courts to courts of appeal.  We held that the new rule applied to a pending FDIC receivership begun prior to the enactment of the statute so the court of appeals had jurisdiction to review the FDIC ruling instead of the district court.

> This Court has previously recognized that principle, holding that amendments to statutes which affect procedural or remedial rights generally apply to pending cases, where such change does not deprive a party of its "day in court." *NCNB Texas Nat'l Bank v. P & R Invs. No. 6*, 962 F.2d 518, 519 (5th Cir.1992) (quoting *FDIC  v. 232, Inc.*, 920 F.2d 815, 818-19 (11th Cir.1991)). "When Congress adopts statutory changes while a suit is pending, the effect of which is not to eliminate a substantive right but rather to "change the tribunal which will hear the case,' those changes--barring specifically expressed intent to the contrary--will have immediate effect." *Turboff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 867 F.2d 1518, 1521 (5th Cir.1989) (quoting *Hallowell*, 239 U.S. at 508, 36 S. Ct. at 202). . . . Section 1821(f)(4) changes the forum which hears deposit insurance disputes; it does not alter any substantive rights of the parties nor does it deprive any party of its day in court. Thus, we hold that 12 U.S.C. § 1821(f)(4)  applies retroactively to govern this case and that this Court has jurisdiction in this appeal.

25

*Id.* at 701.

This principle – new procedural rules should be applied to pending cases – has been recognized and applied in pre- and post-*Landgraf* cases and in multiple contexts.  See *NCNB Texas Nat'l Bank*, 962 F.2d at 519 (Intervening statute changing the time allowed to the FDIC to remove a case applies to pending case.);  *Turboff*, 867 F.2d at 1521 (New rule in Federal Arbitration Act that barred appeal of interlocutory orders directing arbitration to proceed and orders staying action pending arbitration applied to pending case.); *Blaz v. Belfer*, 368 F.3d 501, 505 (5th Cir. 2004)(Securities Litigation Uniform Standards Act, which provides for removal and dismissal of certain state law securities class actions, applied to suit arising out of pre-enactment conduct.); *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292 (5th Cir. 2002) (Statute and regulations revised between petitioner's illegal reentry and the date of Notice to Intent to Reinstate his prior deportation order was issued.  The revised statute and regulations expanded the class subject to reinstatement of removal, removed judicial review of the prior removal order and allowed an immigration officer, rather than an  immigration judge to determine whether reinstatement was proper.)

This long-standing general rule that changes in procedure apply to pending cases is consistent with the treatment of rule changes under the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure.  Under Fed.R.Civ.P. 86(a)(2), new rules and amendments govern proceedings in pending actions unless the Supreme Court specifies otherwise in its promulgating order or the district court determines that its application is not feasible or would work an injustice.  Fed. R. Civ. P. 82(a)(2); Moore's Federal Practice, § 86.03.  The

same treatment is given to amendments to the Federal Rules of Criminal Procedure. Orders from the Supreme Court to Congress transmitting amendments to the rules approved by the Supreme Court include language that the amendment shall take effect on a given effective date and "shall govern all proceedings in criminal cases thereafter commenced and, insofar as just and practicable, all proceedings in criminal cases then pending." See Orders of the Supreme Court of the United States Adopting and Amending Rules, Federal Criminal Code and Rules, pp. 15-25 (West 2011 Edition).

Based on the above authority, the new BOP regulation dispensing with the administrative hearing is a procedural rule that applies to pending cases. In the words of the *Landgraf* Court, "Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." 511 U.S. at 275. Thus if we were to grant Gutierrez the relief he requests, i.e. remand the case to the BOP, the BOP should apply the new regulation and properly decline to hold an administrative hearing. Because a remand would accomplish no purpose, we should affirm the district court's order.[1]

The panel opinion implies that the change in the regulation has substantive effects that preclude its application to this case. However, this court in *White* addressing the regulations at issue in this case, stated, "The *Sell* Court was addressing an inmate's **substantive** right to be free from unwanted

---

[1] The majority suggests that the administrative hearing could serve a purpose because if the neutral BOP psychiatrist found it inappropriate to forcibly medicate Gutierrez, that would end the right of the government to require medication for this purpose. No authority is cited for this proposition and *Sell* certainly does not condition the district court's authority to order forced medication on a favorable ruling by the BOP.

medication - not the **procedural** protections of that right." *United States v. White*, 431 F.3d 431,435 (5th Cir. 2005) (emphasis added).

The majority relies on general statements in the cases supporting the well known principal that some procedural changes impair a party's substantive rights and do not apply to pending cases. But the majority opinion fails to cite a single case that refuses to apply a change comparable to the change in this case to pending cases. All the cases we have found that consider changes to the nature of the hearing, including changes in the decision maker, have been applied to pending cases.

Based on the above analysis, I would hold that the new BOP regulations in 28 C.F.R. § 549.43 would apply to Gutierrez on remand, rendering moot his request for a hearing under the prior version of the regulations.

B.

Even if we consider that the previous version or unamended version of the relevant regulation must apply to this case, based on this record, the remand to the Bureau of Prisons for another hearing is an exercise without a purpose.

In *Sell v. United States*, 539 U.S. 168 (2003), while the unamended version of the regulations were in effect, the Supreme Court considered when it is constitutionally permissible for the government to forcibly medicate an inmate with anti-psychotic drugs to render the defendant competent to stand trial for serious but non-violent crimes. The Court concluded that a United States district judge may order forced medication "only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial and taking account of less intrusive alternatives, is necessary significantly to further important government trial related interests."

The only issues laid out by the Supreme Court to which the neutral psychiatrist could make contributions are medical issues, i.e. whether the treatment is medically appropriate, is necessary to restore competency; is substantially unlikely to have side effects that may undermine the fairness of the trial; and whether less intrusive alternatives are available to restore competency.

The two government psychiatrists who gave opinions on these issues before the district court both concluded that the treatment was medically appropriate, that Gutierrez had been treated with the drugs that would be used in this case on previous occasions without serious side effects and was unlikely to have such side effects at this time. The psychiatrists were unaware of any less intrusive alternatives to restore competency. The psychiatrists also testified that Dr. Newman, who would have been the neutral pscyhiatrist in the event a hearing were held, agreed with these conclusions. Gutierrez offered no contrary evidence before the district court. On appeal, Gutierrez does not challenge the accuracy of these opinions. Given that Gutierrez has raised no question about the accuracy of the resolution of the issues within the neutral psychiatrist's expertise, a remand for a hearing on the medical issues would accomplish nothing.

The defendant argues and the majority essentially holds that nevertheless a hearing for a hearing's sake is necessary. In sum, Gutierrez does not quarrel with the medical testimony or the decision by the district court that forced medication was appropriate. Under these circumstances a remand to the BOP to consider an issue Gutierrez does not contest would be a useless exercise.