# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 20, 2013

Lyle W. Cayce
Clerk

No. 11-20698

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

DAVID BRIAN MANN,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
No. 4:10-CR-304-1

Before KING, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:[*]

David Brian Mann was charged with being a felon in possession of a firearm. After the district court found Mann incompetent to stand trial, the government moved to forcibly medicate him to restore his competency for trial. The district court granted the government's motion, and Mann appeals. For the reasons set forth below, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20698

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On April 15, 2010, David Mann was charged in a criminal complaint with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Mann had come to the attention of law enforcement after sending facsimiles to various federal courts that, although largely unintelligible, were deemed potentially threatening because they appeared to discuss placing something "up in smoke" and killing one or more individuals.  During the course of investigating these facsimiles, law enforcement officers learned that Mann was a convicted felon, and also discovered a loaded firearm and over three-hundred rounds of ammunition in his vehicle.  After a joint preliminary and detention hearing following his arrest, a magistrate judge ordered Mann detained pending trial.

On May 3, 2010, Mann filed an unopposed motion for a psychiatric or psychological examination and for a hearing to determine his competency to proceed to trial.  Among other things, the motion suggested that reasonable cause existed to believe that Mann was incompetent to stand trial because (1) the evidence at the detention hearing included "largely unintelligible" facsimiles; (2) the magistrate judge's order following the detention hearing stated that "Mann has a history of mental illness that according to his brother includes a diagnosis of bi-polar with a schizophrenic disorder"; and (3) in a prior proceeding in Texas state court, a jury had concluded that Mann was incompetent to proceed to trial, and he subsequently had been committed to a state mental facility.  In light of this motion, a magistrate judge ordered that Mann undergo a psychiatric or psychological examination pursuant to 18 U.S.C. § 4241(b) to assess his competency to stand trial.

Mann eventually was indicted for violating 18 U.S.C. § 922(g)(1) and the court entered a not guilty plea on his behalf.  At a competency hearing held in August 2010, the district court determined—based largely on the psychological

No. 11-20698

evaluation ordered by the magistrate judge and conducted by the Bureau of Prisons ("BOP") in Fort Worth, Texas—that Mann was incompetent to proceed to trial.  Consequently, pursuant to 18 U.S.C. § 4241(d), the court entered an order directing that Mann be transferred to a medical facility for a period of 120 days "for the purposes of treating and restoring [his] competence." In accordance with relevant law, the order did not then address whether Mann could be forcibly medicated.

On January 6, 2011, the chief psychiatrist at the Federal Medical Center in Butner, North Carolina ("FMC Butner") held a hearing pursuant to *Washington v. Harper*, 494 U.S. 210 (1990)[1] ("*Harper* hearing"), to determine whether Mann should be involuntarily medicated on the basis that he was a danger to himself and others.[2]  Pursuant to applicable BOP regulations, Mann received written notice of the hearing, was present and advised of his rights, and had the aid of a staff representative at the hearing.  A report prepared after Mann's *Harper* hearing ("*Harper* Report") concluded that Mann suffered from a form of schizophrenia, but that he did not meet the criteria for involuntary treatment pursuant to *Harper* because he was not a danger to himself or others, and his mental illness had not rendered him gravely disabled or unable to care for his physical needs.  Mann's *Harper* Report did not contain an opinion or

---

[1] As discussed more thoroughly *infra*, *Harper* held that the Due Process Clause permits the government to forcibly medicate a prison inmate with a serious mental illness "if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest."  494 U.S. at 227.

[2] This hearing took place more than 120 days after the court's August 2010 order.  On October 29, 2010, officials at FMC Butner notified the court that Mann had not been transferred to its custody until October 5, 2010.  Facility personnel therefore requested that the evaluation period ordered in August 2010 extend through February 1, 2011.  Mann opposed the request, contending that the BOP was responsible for the delay and that the court's order, as well as 18 U.S.C. § 4241(d), authorized a maximum of four months to determine whether there was a substantial probability that Mann would become competent. The record does not reflect whether the district court formally ruled on these matters, though Mann does not raise them as grounds for his appeal.

reference as to whether he could or should be involuntarily medicated to restore his competency to proceed to trial.

On January 27, 2011, Mann's treating psychologist and psychiatrist at FMC Butner issued an evaluation assessing Mann's mental state and the potential use of forced medication to restore his competency to stand trial ("Butner Evaluation"). No hearing was conducted specifically in connection with the evaluation, though the report recounted the information that had been considered, including Mann's review conducted by the BOP in Fort Worth; Mann's *Harper* Report; other BOP medical and psychological files and reports; statements by Mann's brother that Mann previously had been committed after an arrest, and had been restored to competency following treatment; and letters Mann had written. The Butner Evaluation concluded that although Mann was not then competent to proceed to trial, there was a substantial probability that his competency could be restored via treatment with antipsychotic medication.

Accordingly, the Butner Evaluation specifically contemplated the possibility of involuntary medication under the requirements of *Sell v. United States*, 539 U.S. 166 (2003).[3] In particular, the evaluation discussed in detail three medications that could be administered to Mann to render him competent for trial, the side effects of those medications, and other pertinent information. Finally, the Butner Evaluation requested that the district court make a judicial determination under *Sell* as to the propriety of involuntarily medicating Mann to restore his competency for trial.

After the district court conducted a status conference to discuss the Butner Evaluation, the government requested in March 2011 that medication be forcibly administered to Mann to render him competent to stand trial. Mann opposed

---

[3] As explained more fully *infra*, *Sell* held that the Constitution "permit[s] involuntary administration of drugs solely for trial competence purposes in certain instances." 539 U.S. at 180.

4

No. 11-20698

the request and filed a motion for release without bond.  In his motion opposing involuntary medication, Mann maintained that the government had not satisfied *Sell*'s requirement that it demonstrate an important interest in forcibly medicating him.  *See* 539 U.S. at 180.

On May 5, 2011, the court held a hearing on the parties' motions.  There, the government argued that it had an important interest at stake because, among other things, Mann had "exhibited behavior [that] has escalated potentially in dangerousness"; there were no assurances that Mann or the community would be safe if he were not confined pending trial; and the government had a "serious interest" in bringing the case to trial because the full range of punishment for Mann's crime could yield up to a ten-year sentence.  Notwithstanding these arguments, however, on May 10, 2011, the court denied the government's request to forcibly medicate Mann and ordered that he be released from custody without bond.

Over three months later, on August 26, 2011, the United States Marshal Service issued an alert to law enforcement officials after Mann told a mechanic that he was going to the federal courthouse in Houston to kill everyone.  The government filed a motion on August 29, 2011, requesting that the district court reconsider its order denying Mann's forcible medication.  The district court granted the motion on August 31, 2011, and ordered Mann returned to custody pending further proceedings.

The district court then held a hearing on September 12, 2011, to determine whether Mann should be detained further and whether, under *Sell*, he should be medicated involuntarily to render him competent to stand trial.  At that hearing, a United States marshal testified about her investigation into Mann's August 2011 threats.  Specifically, she relayed that Mann had told the mechanic that he was angry "at the Federal Government" because it "had killed over 200 people, that he wasn't going to wait to be killed, that he was going to the federal

5

No. 11-20698

building to kill everyone . . . in downtown Houston, and that he had weapons with him." The marshal also stated that Mann had only been located and apprehended after law enforcement officers enlisted the assistance of Mann's brother.

After the marshal testified, the district court granted the government's motion and ordered that Mann be forcibly medicated "so that he might be brought to a point of mental capacity to assist his attorney in representing him and in preparing for his defense." In a subsequent written order, the court explained that the government had satisfied *Sell*'s requirements and, in particular, that the Butner Evaluation and arguments of counsel demonstrated "that important government interests are at stake in retaining Mann in a medical facility in order to restore Mann to competency so that he may face the charges alleged in the indictment." The court consequently ordered that Mann be committed for four months for treatment in accordance with the recommendation in the Butner Evaluation, and authorized the government to forcibly administer antipsychotic medication to Mann as necessary.

Mann timely filed notice of appeal on September 26, 2011, arguing that the district court erred in ordering that he be forcibly medicated. On September 27, 2011, the district court granted Mann's unopposed motion to stay the involuntary administration of medication pending disposition of this appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

Because involuntary medication orders conclusively decide a disputed question and resolve an important issue, this court has jurisdiction to consider this appeal under the collateral order doctrine. *See Sell*, 539 U.S. at 175-77; *United States v. White*, 431 F.3d 431, 432-33 (5th Cir. 2005). In forcible medication cases, this court ordinarily reviews the district court's findings of fact for clear error and its conclusions of law de novo. *White*, 431 F.3d at 433. However, when, as here, a party "fails to preserve an error by specific objection

6

in the trial court, an appellate court reviews the district court's legal conclusions for plain error." *United States v. Vargas-Soto*, 700 F.3d 180, 182 (5th Cir. 2012).

Under plain-error review, the party seeking review "must establish: (1) an error; (2) that is clear and obvious; and (3) that affected his substantial rights." *United States v. Hernandez-Martinez*, 485 F.3d 270, 273 (5th Cir. 2007). "If these conditions are met, this court can exercise its discretion to notice the forfeited error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks and citation omitted). Even under plain-error review, we consider de novo whether an "error" has been committed. *United States v. Anderson*, 559 F.3d 348, 354 (5th Cir. 2009).

### III.  ANALYSIS

On appeal, Mann raises two arguments. First, he submits that the district court committed plain error by ordering that he be forcibly medicated for trial competency purposes without requiring the government to exhaust certain administrative remedies. Second, Mann maintains that he should have received a second *Harper* hearing after his May 2011 release, and that the court's failure to require such a hearing constituted plain error. We will consider these arguments in detail after briefly discussing the legal framework surrounding forcible medication orders.

### A.  Applicable Law

In *Harper*, the Supreme Court explained that inmates possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." 494 U.S. at 221-22. Nevertheless, the Court also recognized that "[t]he extent of a prisoner's right under the Clause to avoid unwanted administration of antipsychotic drugs must be defined in the context of the inmate's confinement." *Id.* at 222. The Court acknowledged, in other words,

that not only does the government have an "interest in combating the danger posed by a person to both himself and others . . . in a prison environment," but it also has an obligation to combat such danger. *Id.* at 225. Accordingly, *Harper* held that the Constitution permits the government "to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227.

More recently, the Court considered in *Sell* whether the Constitution permits the government to forcibly medicate a defendant for the purpose of rendering him competent to stand trial. 539 U.S. at 169. The Court ultimately concluded that the government may forcibly administer medication "solely for trial competence purposes," but only "in certain instances" that "may be rare." *Id.* at 180. Specifically, *Sell* held that before a court properly may order a defendant's forcible medication, it must find that: (1) "*important* governmental interests are at stake"; (2) "involuntary medication will *significantly further* those . . . interests" in that the medication is "substantially likely to render the defendant competent to stand trial," and is "substantially unlikely to have side effects that will interfere with the defendant's ability to assist counsel in conducting a trial defense"; (3) "involuntary medication is *necessary* to further those interest . . . . [in] that any alternative, less intrusive treatments are unlikely to achieve substantially the same results"; and (4) "administration of the drugs is *medically appropriate, i.e.,* in the patient's best medical interest in light of his medical condition." *Id.* at 180-81.

Although *Harper* and *Sell* primarily focused on the substantive aspects of a defendant's due process right, a defendant also may be entitled to certain procedural protections in connection with the government's efforts to involuntarily medicate him. BOP regulations in effect until August 12, 2011 ("1992 regulations"), for instance, outlined the "administrative due process

procedures" available to inmates the government sought to forcibly medicate. 28 C.F.R. § 549.43 (1992).[4]

Under the 1992 regulations, before the government could forcibly medicate an inmate on *either* dangerousness or trial competency grounds, it was required to provide him with notice of an impending hearing and "the reasons for the medication proposal." *Id.* § 549.43(a)(1), (5). It then was required to hold a hearing at which the inmate had "the right to appear, to present evidence, to have a staff representative, to request witnesses, and to request that witnesses be questioned by the staff representative or by the person conducting the hearing." *Id.* § 549.43(a)(2). The regulations mandated that the hearing be conducted by a neutral psychiatrist who was not then "involved in the diagnosis or treatment of the inmate," *id.* § 549.43(a)(3), but who was charged during the hearing with determining whether medication was necessary on the basis for which it was sought, *id.* § 549.43(a)(5). The inmate's treating clinician was required to attend the hearing and "present clinical data and background information relative to the need for medication." *Id.* § 549.43(a)(4). At the conclusion of the hearing, the presiding psychiatrist was directed to prepare a written report outlining his or her decision, and to provide that report to the inmate, who then had the right to appeal to an institutional administrator. *Id.* § 549.43(a)(5), (6). Although there was no statutory or regulatory provision mandating that the government exhaust these procedures prior to seeking a forcible medication order in federal court, we recognized in *White* that the jurisprudential doctrine of exhaustion applies to these cases. 431 F.3d at 434.

---

[4] The regulations contained in 28 C.F.R. § 549.43 until August 12, 2011, were first made effective on November 12, 1992. These regulations will be referred to, for convenience, as the "1992 regulations." As further explained *infra*, the 1992 regulations were amended in 2011 and moved to 28 C.F.R. § 549.46. The amended regulations will be referred to as the "2011 regulations."

Importantly, effective August 12, 2011, the 1992 regulations were "clarified and updated to reflect current caselaw"—most pertinently, *Sell* (the "2011 regulations"). Psychiatric Evaluation and Treatment, 76 Fed. Reg. 40229, 40229 (July 8, 2011); *see also* 28 C.F.R. § 549.46 (2011). The amendment specifically codified the directive emanating from *Sell* that "[o]nly a Federal court of competent jurisdiction may order the involuntary administration of psychiatric medication for the sole purpose of restoring a person's competency to stand trial." *Id.*; *see also Sell*, 539 U.S. at 180-83. Accordingly, under the 2011 regulations, an administrative hearing and its attendant procedures are no longer required where a court orders involuntary medication solely to render an inmate competent to proceed to trial. 28 C.F.R. § 549.46(b)(2). The procedural safeguards outlined above remain in place for defendants the government seeks to forcibly medicate on dangerousness grounds. 28 C.F.R. § 549.46(a).

## B. Discussion

Mann advances two arguments to support his contention that the district court committed plain error by ordering that he be forcibly medicated to stand trial. First, he submits that because many of the events concerning this case took place before the effective date of the 2011 regulations, the 1992 regulations apply. Accordingly, Mann maintains that he was deprived of an *administrative* hearing, available under the 1992 regulations, concerning the propriety of forcibly medicating him for trial competency purposes. Second, Mann argues that regardless of which regulations apply, he was erroneously deprived of a second *Harper* hearing after his release in May 2011, which he believes should have been conducted before the court ruled on the government's August 2011 motion to reconsider. These assertions will be discussed in turn.

No. 11-20698

## 1. The Applicable Regulations

"The first step in plain-error review is to determine whether there was error." *United States v. Rodriguez-Escareno*, 700 F.3d 751, 753 (5th Cir. 2012). "[T]he burden of establishing entitlement to relief for plain error is on the defendant claiming it." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004). Here, Mann attempts to satisfy this burden by asserting that the 1992 regulations apply to his case, and that he therefore was erroneously denied an administrative hearing—conducted by a neutral clinician—concerning whether he should be forcibly medicated to stand trial. *See* 28 C.F.R. § 549.43(a)(1), (5) (1992). In support of this argument, Mann highlights that the 1992 regulations were in effect when he was charged in April 2010 and when the government first moved to forcibly medicate him in March 2011. He further contends that although the government filed its motion to reconsider after the effective date of the 2011 regulations, the motion referenced the government's arguments made in earlier filings and, in any event, his *Harper* Report and Butner Evaluation were prepared prior to August 2011.

Mann relies on *United States v. Gutierrez* to advance his argument. 443 F. App'x 898 (5th Cir. 2011) (unpublished). In *Gutierrez,* a defendant ("Gutierrez") who had threatened to harm or kill several public officials was deemed incompetent to stand trial. 443 F. App'x at 899. As here, the government had provided Gutierrez a *Harper* hearing to determine whether medication should be involuntarily administered to him on dangerousness grounds. *Id.* at 899-900. Gutierrez's *Harper* report concluded that forcible medication for dangerousness was not warranted, but it did not address whether it was justified for trial competency pursuant to *Sell. Id.* As with Mann, the government subsequently moved for a determination from the district court that Gutierrez could be forcibly medicated under *Sell* solely for trial competency purposes. *Id.* at 900. The district court granted the motion, based largely on a

11

report and testimony provided by Gutierrez's treating clinicians at FMC Butner. *Id.*

Gutierrez appealed, arguing that he was entitled to an administrative hearing in connection with FMC Butner's trial competency determination. *Id.* at 900-02. A panel of this court agreed, noting that although the 2011 regulations had taken effect *after* Gutierrez appealed, the 1992 regulations were "in place at the time the government sought to medicate" him. *Id.* at 901. The panel further held that the 1992 regulations applied on remand, because to hold otherwise would result in an impermissible retroactive application of the new regulations. *Id.* at 908.

In reaching these conclusions, the panel explained that deciding whether "a particular rule operates 'retroactively'" involves "a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at 905 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994)). Relying on *Landgraf*, *Gutierrez* emphasized that retroactivity analysis centers on "whether the new provision attaches new legal consequences to events *completed before* its enactment." *Id.* (emphasis added) (quoting *Landgraf*, 511 U.S. at 270)). The panel further highlighted that, in considering these issues, it was required to "look to the government's request that Gutierrez be forcibly medicated," as that was "'the relevant conduct regulated by the [regulations]' and completed before the adoption of the regulations." *Id.* (alteration in original) (quoting *Republic of Austria v. Altmann*, 541 U.S. 677, 697-98 (2004)).

Applying these principles to the facts before it, the *Gutierrez* panel stressed that the 2011 regulations—though proposed "at the time the BOP sought to medicate Gutierrez"—had not been adopted until *after* he appealed the district court's forcible medication order. *Id.* at 903; *see also id.* at 905 (noting that the 2011 regulations became effective "after the date [the government]

sought to medicate Gutierrez"); *id.* at 908 (stating that the 1992 regulations "were controlling at the time the government sought to medicate Gutierrez"). Because the government's request to forcibly medicate Gutierrez had been "*completed before* the adoption of the regulations," the panel concluded that Gutierrez had "a settled expectation that the old regulation[s] would apply." *Id.* at 905, 906 (emphasis added). Accordingly, it vacated the district court's forcible medication order, holding that "[t]he government failed to exhaust the administrative processes outlined in the 1992 regulations." *Id.* at 903-04, 908.

Mann's reliance on *Gutierrez*, however, is misplaced. As is true of this case, the *Gutierrez* panel expressly recognized that its "holding [was] narrowly limited to the facts and procedural posture presented [there]." *Id.* at 908. Ignoring this admonition, Mann neglects the meaningful distinctions between the circumstances of his case and those presented in *Gutierrez*.

As mentioned, *Gutierrez* focused extensively on the fact that the government's request to forcibly medicate Gutierrez was "completed" while the 1992 regulations were still in effect. *Id.* at 905. Such was not the case here. To be sure, the government first sought to forcibly medicate Mann in March 2011, when the 1992 regulations were in place. Nevertheless, the events precipitating its August 2011 motion all occurred *after* the effective date of the 2011 regulations. In contrast to the situation in *Gutierrez*, here, the 2011 regulations were in effect: (1) on August 26, 2011, when Mann told a mechanic that he was going to the federal courthouse to kill everyone; (2) on August 29, 2011, when the government filed a motion seeking authorization to forcibly medicate Mann; (3) on September 12, 2011, when the district court held a hearing and granted the government's motion after receiving evidence concerning Mann's August 2011 threats; and (4) on September 20, 2011, when the court issued its written order authorizing Mann's commitment and forcible medication.

This recitation reveals that the government's initial request for authorization to forcibly medicate Mann was denied by the district court, Mann was released from custody, and things were left there. The government's current request for authorization to forcibly medicate Mann was neither initiated nor, more importantly, completed—*Gutierrez* and *Altmann* instruct that completion is "the relevant conduct regulated by the regulations"—until *after* the new regulations became effective, when the government filed its August 2011 motion. *Id.* (alteration and citation omitted). Thus, in contrast to the defendant in *Gutierrez*, when the district court here issued its forcible medication order, Mann could not have had a reasonable expectation that the 1992 regulations would apply.

Put simply, because the events relevant to the district court's order were not completed before the 2011 regulations took effect, the government was not constrained by the procedural requirements contained in the 1992 regulations. Rather, Mann's case was controlled by the 2011 regulations, which eliminated the requirement that the government conduct an administrative hearing before seeking authorization to forcibly medicate a defendant for trial competency purposes. 28 C.F.R. § 549.46(b)(2) (2011). Accordingly, we hold that the district court committed no error in entering its forcible medication order without first requiring the government to conduct such a hearing.

Moreover, although we find no error, even were we to assume *arguendo* that the district court erred, Mann still could not carry his burden of demonstrating reversible error. To prevail under plain-error review, a defendant must establish not only that the district court erred, but also that the error committed was "plain." A "plain" error is one that is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). In other words, the error must be so "obvious," "clear," or "readily apparent" that the court was "derelict in countenancing [it], even absent the

defendant's timely assistance in detecting [it]." *United States v. Miller*, 406 F.3d 323, 330 (5th Cir. 2005) (alterations in original) (quoting *United States v. Dupre*, 117 F.3d 810, 817 (5th Cir. 1997)).  Given this high bar, we previously have held that "even where an argument merely requires extending existing precedent, the district court's failure to do so cannot be plain error." *Jimenez v. Wood County, Tex.*, 660 F.3d 841, 847 (5th Cir. 2011).

Thus, as applied here, to satisfy the second prong of plain-error review, Mann must demonstrate not only that the 1992 regulations were controlling throughout his case, but also that those regulations *obviously* were controlling. In attempting to satisfy this burden, Mann again relies on *Gutierrez*. *Gutierrez*, however, concerned circumstances in which the 1992 regulations were the *only* provisions in effect during the course of the defendant's district court proceedings.  443 F. App'x at 905.  For that reason, the court's disposition rested heavily on the fact that the 2011 regulations were not adopted until after Gutierrez appealed.  *See id.* ("An agency cannot obtain a *de facto* rule change by complying with a *proposed* rule . . . .").  *Gutierrez* therefore did not address the situation presented here, where the 2011 regulations were firmly in place when the government sought the forcible medication order at issue here, and when the court issued that order.  *See United States v. Potts*, 644 F.3d 233, 236-37 (5th Cir. 2011) (explaining that the defendant could not satisfy plain-error review "because the error he claim[ed] was not clear under existing Fifth Circuit law").[5] Further, although retroactivity analysis certainly is nothing new, as the Supreme Court has explained, "[a]ny test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity." *Landgraf*, 511 U.S. at 270.

---

[5] We note also that no other circuit appears to have addressed the precise question presented here.

Accordingly, we hold both that the district court committed no error in proceeding under the 2011 regulations, and that Mann has not demonstrated that the "error" he alleges was so obvious, clear, or readily apparent that the district court was derelict in countenancing it.

## 2. The Necessity of a Second *Harper* Hearing

Relying on *Sell*, Mann also argues that under either the 1992 or 2011 regulations, the district court plainly erred by depriving him of a second *Harper* hearing, which he submits should have been conducted after he was released in May 2011, but before the court ruled on the government's August 2011 motion to reconsider. As we will explain, a second *Harper* hearing was not required in the instant circumstances.

In *Sell*, the Supreme Court explained that a court need not employ the standards set forth in that case if forced medication is warranted for purposes other than rendering a defendant competent for trial, "such as the purposes set out in *Harper* related to the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk." *Sell*, 539 U.S. at 181-82. Indeed, the Court explained that "[t]here are often strong reasons for a court to determine whether forced administration of drugs can be justified on these alternative grounds before turning to the trial competence question." *Id.* at 182. In particular, the Court first noted that "the inquiry into whether medication is permissible . . . to render an individual nondangerous is usually more objective and manageable than the inquiry into whether medication is permissible to render a defendant competent." *Id.* (internal quotation marks and citation omitted). Second, *Sell* observed that "courts typically address involuntary medical treatment as a civil matter, and justify it on these alternative, *Harper*-type grounds." *Id.* Finally, the Court explained that if medication is authorized "on these alternative

16

grounds, the need to consider authorization on trial competence grounds will likely disappear." *Id.* at 183. Thus, *Sell* concluded that "a court, asked to approve forced administration of drugs for purposes of rendering a defendant competent to stand trial, should *ordinarily* determine whether the Government seeks, or has first sought, permission for forced administration of drugs on these other *Harper*-type grounds; and, if not, why not." *Id.* (emphasis added).

We applied these principles in *White*, 431 F.3d 431. There, the government "sought an order directly from the district court authorizing involuntary medication, first on the basis of dangerousness, and, in the alternative, on the basis of competence to stand trial." *Id.* at 434. Although the government had not conducted a *Harper* hearing before seeking a forcible medication order, the district court nevertheless held that involuntary medication was warranted on both grounds advanced by the government. *Id.* at 432. We reversed, observing that the government's request "made an end run around the regulatory scheme laid out in" the 1992 regulations. *Id.* at 432, 434; *see also id.* at 435 ("Nothing in *Sell* casts doubt on [the 1992 regulations'] applicability to the dangerousness inquiry."). In light of *Harper* and *Sell*, we held that it "was error for the district court to make the initial determination to medicate [the defendant] involuntarily." *Id.* at 434. We thus vacated the district court's forcible medication order and instructed the court to order exhaustion of the administrative procedures set forth in the 1992 regulations. *Id.* at 435-36.

Mann submits that, together, *Harper*, *Sell*, and *White* stand for the proposition that he was entitled to a second *Harper* hearing after the district court released him in May 2011. Underlying this contention is Mann's argument that "[i]t could not be more clear that even before, but especially after, the court denied the government's motion to forcibly medicate [him] on May 5, 2011, the government was seeking to [do so] on grounds of dangerousness." Mann

contends that the government "harped on [his] dangerousness" by stating to the district court that Mann had "exhibited behavior which has escalated in dangerousness"; his actions were "indicative of somebody whose behavior ha[d] escalated towards potentially a more violent range"; and his "conduct ha[d] escalated [and] created a substantial threat of harm to himself and others." Mann further asserts that the only new evidence the government presented in its August 2011 motion to reconsider was "evidence on dangerousness"—specifically, the threats Mann made concerning killing people at the federal courthouse in Houston. Citing *White*, Mann asserts that, given the government's focus on his alleged dangerousness, the district court plainly erred by failing to require the government to conduct a second *Harper* hearing before authorizing his forcible medication for trial competency purposes.

### a. Mann's *Harper* Hearing

We emphasize at the outset that Mann's arguments neglect that he received a *Harper* hearing in January 2011—just months before the court ultimately issued its forcible medication order. Indeed, the only cases Mann cites in which courts have remanded for *Harper* hearings are cases where no such hearings *ever* were conducted, and where district courts authorized forcible medication without explaining the absence of a *Harper* inquiry. *See, e.g.*, *White*, 431 F.3d at 435; *United States v. Morrison*, 415 F.3d 1180, 1181-82 (10th Cir. 2005). Mann points to no authority discussing the circumstances under which a second *Harper* hearing might be required, much less authority suggesting that there may even be such a requirement.[6]

---

[6] We note, however, that courts occasionally have remanded where there was some question whether an inmate's first *Harper* hearing was conducted in compliance with BOP regulations. *See, e.g.*, *United States v. Morgan*, 193 F.3d 252, 267-68 (4th Cir. 1999); *United States v. Humphreys*, 148 F. Supp. 2d 949, 953 (D. S.D. 2001); *United States v. McAllister*, 969 F. Supp. 1200, 1210 (D. Minn. 1997). Here, however, Mann has not alleged that the *Harper* hearing he received was in any way procedurally defective.

No. 11-20698

To the contrary, some courts have affirmed forcible medication orders where the government *never* conducted a *Harper* hearing. *See, e.g.*, *United States v. Hernandez-Vasquez*, 513 F.3d 908, 914-15 (9th Cir. 2008) (concluding that the district court "undertook the *Sell* inquiry without making findings" under *Harper*, "after the Government had made clear that it did not intend to seek involuntary medication on dangerousness grounds"); *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1224-25 (10th Cir. 2007) (explaining that "there was no need for the district court to perform a *Harper* inquiry or make *Harper* findings" because there was no evidence that the defendant might be dangerous). This approach is not inconsistent with *Sell*'s directive that courts "asked to approve forced administration of drugs" to restore a defendant's trial competency "should *ordinarily* determine whether the Government seeks, or has first sought, permission for forced administration of drugs on . . . *Harper*-type grounds; *and, if not, why not.*" *Sell*, 539 U.S. at 183 (emphases added). Where a *Harper* report indicates that a defendant is not dangerous, or where there is otherwise no evidence of his dangerousness, the reason for the government's decision not to seek a forcible medication order on that basis would seem obvious.

Further, although Mann evidently believes that his January 2011 *Harper* Report was stale by the time the court issued its forcible medication order, the purposes underlying the *Sell* Court's admonition that a court ordinarily should "determine whether forced administration of drugs can be justified on [*Harper*-type] grounds *before* turning to the trial competence question" clearly were satisfied in this case. *Sell*, 539 U.S. at 182. In particular, because Mann received a *Harper* hearing, a neutral clinician already had engaged in the more "objective and manageable" inquiry into whether medication was permissible to render him non-dangerous. *See id.* (citation omitted). Although the related report did not support forcibly medicating Mann for this purpose, "the findings

19

underlying [that] decision [helped] to inform expert opinion and judicial decisionmaking in respect to [the] request to administer drugs for trial competence purposes." *Id.* at 183. In fact, the findings from Mann's *Harper* Report were included in the Butner Evaluation, which the court specifically referenced in its order authorizing Mann's forcible medication.

Simply put, Mann cites no authority to support his argument that a second *Harper* hearing generally is required in the instant circumstances, and we have found none.

### b. Evidence of Mann's Dangerousness

Mann also advances, however, the more specific argument that he was entitled to a second *Harper* hearing because the government improperly relied on evidence of his dangerousness in seeking to medicate him for trial competency purposes. We disagree.

As previously noted, the Butner Evaluation expressly contemplated the possibility of involuntarily medicating Mann pursuant to *Sell*. The evaluation provided a detailed recommendation as to the medications that could be administered to Mann to render him competent for trial, the side effects of those medications, and other related information. Thus, the only remaining question was whether "*important* governmental interests [were] at stake"—an inquiry *Sell* left to the judiciary. *Id.* at 180.

In connection with this inquiry, the district court considered evidence of Mann's dangerousness. Mann complains that consideration of such evidence was improper, as he suggests its introduction is indicia of an improper governmental motive to medicate him on dangerousness grounds. The government responds that it consistently pursued in the district court an order authorizing it to forcibly medicate Mann solely for trial competency purposes. Moreover, the government argues that it only introduced evidence of Mann's dangerousness to prove that important governmental interests were at stake.

No. 11-20698

The government asserts that its position is supported by *United States v. Palmer*, 507 F.3d 300 (5th Cir. 2007).  There, the defendant ("Palmer") first was indicted after threatening to kill a federal court security officer.  507 F.3d at 301. A mental health evaluation subsequently conducted at FMC Butner revealed that Palmer suffered from a delusional disorder, but that he was not a danger to himself or others.  *Id.*  The indictment against Palmer eventually was dismissed, but nearly two years later, he was arrested after resisting arrest by United States marshals, who had discovered Palmer with a firearm on the Louisiana State University ("LSU") campus.  *Id.* at 302.  In connection with this incident, Palmer was charged with firearms offenses and remanded to the custody of FMC Butner for an evaluation of his competency to stand trial.  *Id.* In their report, Palmer's treating clinicians at FMC Butner recommended that he be forcibly medicated to restore his trial competency.  *Id.*  The district court so ordered, and Palmer appealed.  *Id.* at 303.

In addressing the district court's treatment of the *Sell* factors, *Palmer* noted that, in connection with the first factor, the "[Supreme] Court recognized that there is an important governmental interest in ensuring that individuals accused of *serious* crimes are brought to trial."  *Id.* (citing *Sell*, 539 U.S. at 180). *Palmer* further explained that "[n]ot only have courts held that crimes authorizing punishments of over six months are 'serious,' they have also concluded that it is appropriate to consider the maximum penalty, rather than the sentencing guidelines range, in determining 'seriousness' in involuntary medication proceedings."  *Id.* at 304.  Because the defendant "*threatened the life of a federal officer* and caused substantial disruption on and near the LSU campus," the *Palmer* court expressed that "it is possible a court may find it appropriate, if he is convicted, to upwardly depart from the guidelines recommended sentencing range."  *Id.* (emphasis added).  The court therefore

held that the district court had not erred in finding that an important governmental interest was at stake.

We agree with the government that, under *Palmer*, a court may consider the maximum penalty a defendant may receive in assessing the "seriousness" of his crime. *Id.* Thus, contrary to Mann's argument, it was proper for the government to introduce evidence touching on Mann's dangerousness in order to prove that it had an important interest in forcibly medicating him for trial competency purposes.[7] Other courts have reached the same conclusion. *See, e.g.*, *United States v. Gomes*, 387 F.3d 157, 160 (2d Cir. 2004) (explaining that "[b]oth the seriousness of the crime and [the defendant's] perceived dangerousness to society [were] evident from the substantial sentence [the defendant faced] if convicted," leading to the conclusion that the  government had an important interest in bringing him to trial (citation omitted)); *accord United States v. Green*, 532 F.3d 538, 546-49 (6th Cir. 2008); *United States v. Evans*, 404 F.3d 227, 236-38 (4th Cir. 2005).

In this case, the government consistently pursued an order authorizing it to forcibly medicate Mann solely for trial competency purposes.  More importantly, it clearly was on this basis that the district court issued its order.[8] We therefore find no error, plain or otherwise, in connection with Mann's assertion that the government improperly relied on evidence of his dangerousness in seeking his forcible medication to stand trial.

In summary, we find no authority or rationale to accept Mann's contention that he was entitled to a second *Harper* hearing.  We therefore hold that the

---

[7] The government notes that like the defendant in *Palmer*, Mann faces a maximum sentence of ten years and, with his threats, has created a substantial risk of harm to others.

[8] The district court's order explained that the court was "required to consider the involuntary application of medical treatment (anti-psychotic medication) for Mann under the terms outlined" in *Sell*.  It then proceeded to discuss *Sell* and made findings in connection with each of the *Sell* factors.  Mann has not challenged those findings.

No. 11-20698

district court did not plainly err in authorizing Mann's forcible medication without requiring the government to conduct another such hearing.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order.

No. 11-20698

GRAVES, Circuit Judge, dissenting.

Because I would reverse the district court's order that Mann be forcibly medicated, I respectfully dissent.

On April 15, 2010, David Brian Mann was charged with being a felon in possession of a firearm after an investigation which was initiated because he sent threatening facsimiles to the United State Supreme Court, the United States Court of Appeals for Veterans Claims, and the United States Court of Appeals for the Armed Forces.  After he was found incompetent to stand trial, the district court ordered him to undergo a psychiatric evaluation to assess his mental state and determine whether he should be forcibly medicated. Subsequently, an appropriate administrative hearing pursuant to *Washington v. Harper*, 494 U.S. 210 (1990), was conducted at the Bureau of Prisons Medical Facility at Butner, North Carolina (FMC Butner) to determine whether forcible medication should be administered for dangerousness.  Although Mann was incompetent, the *Harper* report concluded that forcible medication was not proper because Mann did not pose a danger to himself or others and his mental illness had not rendered him gravely disabled or unable to care for himself.  The report further indicated that involuntary medication was not approved.

Subsequently, FMC Butner submitted a forensic evaluation[1] indicating a substantial probability that Mann's competency could be restored with a period of treatment with haloperidol decanoate and asking the court to make a judicial determination regarding the appropriateness of forced medication under *Sell v. United States*, 539 U.S. 166 (2003).  The Butner report further indicated that

---

[1] This forensic evaluation was not the equivalent of an administrative hearing as required by the then-existing regulations.  *See* 28 C.F.R. § 549.43(a)(1), (5) (1992), now 28 C.F.R. § 549.46 (2011).

No. 11-20698

Mann had previously been made competent at Rusk State Hospital during a separate incident, but that those records had not yet been obtained.

After a hearing in May of 2011, the district court denied the Government's request to forcibly medicate Mann and ordered him released without bond.  In August of 2011, Mann made statements to a mechanic, who worked at the Mann family business, that the federal government had killed 200 people, that he was not going to wait to be killed and that he was going to kill people at the federal courthouse in Houston.  Based on those statements, the Government filed a motion to reconsider the order denying forced medication and a request for detention.  The district court granted the motion to reconsider.  Mann was arrested at his daughter's home with only a pocket knife.  On September 20, 2011, the court entered an order allowing for further commitment and the involuntary administration of medication.  Mann filed this interlocutory appeal. The district court granted Mann's unopposed motion for stay pending appeal.

*Sell Hearing*

The majority finds that the district court did not err in ordering Mann to be forcibly medicated because under the new 2011 regulations there was no requirement for an administrative hearing.  I disagree with the majority's finding that the 2011 regulations are applicable.

This case revolves around a change in the procedural due process requirements available to inmates the Government wants to forcibly medicate. Prior to August 12, 2011, the regulations required the Government to provide the inmate with notice, the reasons for medication purposes, and an actual hearing before the inmate could be forcibly medicated for either dangerousness or competency.  The regulations changed on August 12, 2011, in relevant part, to no longer require an administrative hearing where a court orders involuntary medication solely to render an inmate competent for trial.

25

No. 11-20698

The case against Mann began prior to the amendment of the regulations. He had an administrative hearing wherein the psychiatrist found that forcible medication was not proper. The district court found that the Government's request to forcibly medicate Mann for either dangerousness or competency should be denied and released Mann without bond by order dated May 10, 2011. On August 12, 2011, the regulations changed. On August 26, 2011, Mann made the comments to the mechanic. On August 29, 2011, the Government filed its motion to reconsider the order denying forced medication. On September 20, 2011, the district court entered an order allowing forcible medication. There was no administrative hearing after the motion to reconsider.

Mann asserts that the district court committed plain error by ordering that he be forcibly medicated for trial competency purposes without requiring the government to exhaust its administrative remedies as required by the Code of Federal Regulations. Mann also asserts that, under Supreme Court and Fifth Circuit precedent, it was plain error for the district court to decide whether forced medication was warranted based on competence before it decided whether it was warranted based on dangerousness.

Mann's case is analogous to *United States v. Gutierrez*, 443 F.App'x 898, 2011 WL 4807760 (5th Cir. 2011)(unpublished) (*Gutierrez I*). In *Gutierrez I*, the defendant, who threatened to kill the president, two former presidents, a secret service agent, and others, was ordered to be involuntarily medicated to render him competent to stand trial. This was done without an administrative hearing. The Government argued that it was not required to provide an administrative hearing because *Sell* implicitly overruled the 1992 regulations and because the proposed changes to the regulations would do away with the administrative process on competency. The changes had been adopted by the time of the appeal.

A panel of this Court vacated and remanded, holding that: 1) The Government failed to exhaust administrative processes, as required, before

No. 11-20698

obtaining the district court order that the defendant be forcibly medicated; 2) the failure to comply with governing regulations was not excused; and 3) the new regulations did not apply retroactively.  Based on the well-settled law under the 1992 regulations, this Court found that "Gutierrez rightfully expected to be afforded a judicial determination by a neutral psychiatrist prior to the judicial hearing." *Id.* at 906.  Further, the panel found that the "new regulation upset Gutierrez's settled expectations about how and when he could be forcibly medicated." *Id.* at 907.  Like Gutierrez, Mann argued in the district court that he was not provided an administrative hearing.  The Court further said:

> In making this determination, we are guided by "familiar considerations of fair notice, reasonable reliance, and settled expectations." . . . Here, we look to the government's request that Gutierrez be forcibly medicated, which is "the relevant conduct regulated by the [regulations]" and completed before the adoption of the regulations.

*Id.* at 905.  (Internal citation omitted).  Here, at the time of the Government's request, as will be discussed more fully herein, the 1992 regulations were in place.

The majority finds that Mann's reliance on *Gutierrez I* is misplaced because the Government's request to forcibly medicate Mann was not "completed" while the 1992 regulations were still in effect as it was in *Gutierrez I.*  In doing so, the majority must find that the Government's second request in August 2011 was not related to the earlier request.  However, the record does not support any such finding.

As stated above, in *Gutierrez I*, this Court said that "we look to the government's request that Gutierrez be forcibly medicated, which is the 'relevant conduct regulated by the [regulations]' and completed before the adoption of the regulations." *Gutierrez I*, 443 F. App'x at 905.  Therefore, we must look to the

27

Government's original request, which was clearly made under the 1992 regulations.

The majority attempts to avoid the requirement in *Gutierrez I* that we look to the regulations in place at the time the Government sought to forcibly medicate because the Government sought a second time to forcibly medicate Mann after the regulations changed. But the second request was not a separate or new request. The Government filed a motion to reconsider the order denying forced medication. That order and the preceding request to forcibly medicate Mann all occurred under the 1992 regulations. Although there was an incident occurring after the regulations changed - the courthouse threat made to the mechanic - the Government also relied on everything from before the change in regulations and was merely asking the district court to *reconsider*.

The second request to forcibly medicate, just as the first, was pursuant to the charge of possession of a firearm by a convicted felon. The district court had already denied the Government's motion to forcibly medicate Mann either because of his dangerousness or to restore his competency to stand trial for possession of a firearm by a convicted felon and had released Mann without bond. At such time that Mann's competency was restored, the Government could then proceed with its case. Before that happened, Mann made the statements to the mechanic and was arrested. On the Government's request, the district court ordered, without the appropriate administrative hearing as required by the applicable 1992 regulations, that Mann be forcibly medicated to restore his competency to stand trial for the possession of a firearm charge. This was error. More importantly, it was plain error. This was not a novel issue because it was addressed in *Gutierrez*. Moreover, the 1992 regulations obviously were controlling as that is what the district court relied upon in denying the Government's request, which the Government later asked the court to reconsider.

No. 11-20698

Further, although *Gutierrez I* was not published, the most recent *Gutierrez* opinion is published. *United States v. Gutierrez*, 704 F.3d 442 (5th Cir. 2013) (*Gutierrez II*).[2]  *Gutierrez II* was Gutierrez's appeal of the order of involuntary medication to restore competency following his administrative hearing on remand from this Court. In *Gutierrez II*, this Court acknowledged and, thus, essentially adopted and incorporated the prior panel's holding in considering whether the order after the appropriate administrative hearing was proper. Nothing in *Gutierrez II* calls into question any of the prior panel's findings. And the fact that *Gutierrez I* was unpublished does not undermine the soundness of its analysis.

*Harper Hearing*

As I would find that the 1992 regulations applied and Mann was entitled to an administrative hearing before a determination regarding forcible medication to restore competency, I would also find Mann's argument regarding exhaustion to be moot. However, despite its *Sell* finding, the majority also finds that a second *Harper* hearing was not required.  These findings are contradictory. If, as the majority finds, the Government's requests were actually two separate requests - one under the 1992 regulations and one under the 2011 regulations - then Mann was entitled to a *Harper* hearing under the second request.

In the motion to reconsider the order denying forcible medication, the Government asked the district court to "reconsider the order denying the United States [sic] request for judicial authorization to administer medication to Mann without his consent."  The motion to reconsider does not say only for the

---

[2] Although this Court affirmed the order of involuntary medication in *Gutierrez II*, it is inapplicable here because Gutierrez had a second administrative hearing, whereas Mann has not.

purposes of restoring competency. Later, the motion again merely asks the court to "reconsider the order denying forcible medication" without limiting the request to competency. However, the Government repeated the following language from the original motion: "Mann's conduct has escalated, created a substantial threat of harm to himself and others, and merits consideration when analyzing the first prong of the *Sell* test." Further, it says, "On August 26, 2011, an alert was issued by the United States Marshal Service stating that David Brian Mann stated to a mechanic that he was going to the federal courthouse to kill people." The motion also references a discussion with Mann's brother, who said he "is extremely concerned that defendant will cause harm to law enforcement or possibly be harmed by law enforcement due to his actions."

If this was a new request for forcible medication under the new 2011 regulations, as the majority finds, then there was clearly a requirement for a *Harper* hearing to determine whether Mann should be forcibly medicated for purposes of dangerousness. The motion fails to say that it is only referring to competency and it discusses Mann's dangerousness. Further, at the hearing, the Government again asserted, albeit during a portion of the discussion of bond[3], that:

> [H]e has exhibited behavior which has escalated potentially in dangerousness. ... That, of course, is indicative of somebody whose behavior has escalated towards potentially a more violent range; and the concern is if he were released on bond with his criminal history and with the type of behavior which he has displayed so far, do we have any assurances that not only he will be safe but the community will be safe outside of his confinement pending trial.

The Government then launched into a discussion of the faxes and the possession of a weapon charge.

---

[3] While this was during a discussion of bond, Mann's counsel was arguing (correctly) that release would be proper if the Government did not meet its burden of showing forcible medication was necessary and appropriate.

However, during the hearing on the motion for forcible medication, no evidence was offered regarding any change in Mann's competency or in support of the theory that forcibly medicating him would make him competent to stand trial. The only witness was a deputy U.S. marshal who testified about the threat made to the mechanic. The Government did not present any medical evidence. If this was actually a new proceeding under the new regulations, then the district court erred in ordering Mann forcibly medicated when there was no evidence introduced regarding his competency or that the forcible administration of medicine would restore his competency.

I further disagree with the majority's finding that the Government properly admitted evidence of Mann's dangerousness to prove that important governmental interests were at stake pursuant to the first factor of *Sell*. The majority relies on *United States v. Palmer*, 507 F.3d 300 (5th Cir. 2007). But *Palmer* is distinguishable as Palmer's conduct was much more serious in nature than possession of a firearm. Palmer threatened the life of a federal officer, resisted arrest by U.S. marshals, *and caused substantial disruption on and near the LSU campus*. Mann said something to a mechanic he worked with and never took any action whatsoever. Further, the Government did not merely offer evidence of what Mann did. The Government also argued regarding Mann's "escalating" dangerousness in a "violent range," etc., all of which is clearly outside of that allowed by *Palmer*. Clearly, the presentation of facts regarding conduct that may justify an upward departure of the sentencing guidelines is entirely different from the presentation of editorial characterizations that may justify a separate, inapplicable basis for forcible medication.

For these reasons, I would reverse the district court's order of forcible medication. Therefore, I respectfully dissent.